Beth A. **FUEHRER**, Appellee,

v.

Ronald D. **FUEHRER**, Appellant.

Superior Court of Pennsylvania.

Argued May 23, 2006.
Filed Aug. 2, 2006.
Reargument Denied Oct. 10, 2006.

Mark L. Sorice, Greensburg, for appellant.

Jane O'Connell, Pittsburgh, for appellee.

BEFORE: DEL SOLE, P.J.E., ORIE MELVIN and COLVILLE,* JJ.

OPINION BY DEL SOLE, P.J.E.:

¶ 1 This is an appeal from a trial court order which granted Appellee–Mother's petition for relocation to the Netherlands and denied Appellant–Father's petition which sought primary physical custody of the parties' two children.

¶ 2 The parties were married in 1995 and became the parents of two daughters, who at the time of the relevant hearing were ages 6 and 9. The parties separated in 2003, about the time Mother met Mr. VanWeert, a citizen of the Netherlands, on the Internet in a chat room. By court order, Mother was granted primary physical custody of the girls with Father having partial periods of physical custody on Thursdays and on alternating weekends. The parties shared legal custody of the children. In October of 2004, Mother filed a petition for relocation in which she sought court approval to relocate with the children to the Netherlands on a permanent basis. Father then filed a petition for primary physical custody. The trial court ordered the petitions consolidated and a hearing was held in which testimony was received from the parties, their daughters, Mr. VanWeert, the director of Family Services for Westmoreland Regional Hospital, who was appointed by the court to make an evaluation, and an attorney from the Netherlands who was familiar with family court matters in her country. Thereafter the trial court issued an opinion and order granting Mother primary physical custody and permitting her to relocate to the Netherlands with the children. Father was granted certain periods of partial physical custody. Legal custody remained shared with both parents.

¶ 3 In this appeal Father challenges the trial court's ruling, arguing that the court improperly applied the test governing relocation requests and incorrectly determined that permitting relocation was in the best interest of the children. Our extensive review of the record and the trial court's rationale for its decision causes us to agree

* Retired Senior Judge assigned to the Superior Court.

with Appellant's assessment of the trial court's ruling.

 ¶ 4 In reviewing a trial court's determination in a matter of custody we remain mindful that:

[O]ur scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is 'whether the trial court's conclusions are unreasonable as shown by the evidence of record.'

*Johns v. Cioci*, 865 A.2d 931, 936 (Pa.Super.2004) (citations omitted). The paramount concern in a child custody case is the best interest of the child, based on a case by case "consideration of all factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being." *Speck v. Spadafore*, 895 A.2d 606, 609 (Pa.Super.2006) (citing *Swope v. Swope*, 455 Pa.Super. 587, 689 A.2d 264 (1997)). When a court is asked to review a request by one of the parents to relocate with the child the best interest analysis must incorporate the three factors originally outlined in *Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434 (1990):

1. The court must assess the potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the children and is not a momentary whim on the part of the custodial parent.

2. Next, the court must establish the integrity of the motives of both the custodial and the non-custodial parent in either seeking the move or seeking to prevent it.

3. Finally, the court must consider the availability of realistic, substitute visitation arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent.

*Billhime v. Billhime*, 869 A.2d 1031, 1037 (Pa.Super.2005).

¶ 5 In the instant case, the trial court recognized its duty of analysis under *Gruber*. In a detailed opinion the trial court sought to apply the necessary considerations to the facts presented before it. However, the trial court erred in not examining the entire factual background of the case and in focusing its ultimate decision on the fact that the children have a closer bond with Mother than with Father. The trial court failed to consider whether it would be in the children's best interest to protect that bond, and yet deny Mother's request to locate.

¶ 6 The following facts were established during the hearing. When Mother was 15 she became pregnant and gave birth to a daughter. Although she married the child's father, the child was given up for adoption to the paternal grandparents. That child is currently an adult and serving in the armed forces in Belgium. Mother later became pregnant by another man, divorced her then husband, and later gave birth to the first of two daughters she had with him—one born in 1983 and another in 1985. In 1988, Mother met Father at a Narcotics Anonymous meeting. Both parties had sought help from the organization after years of drug abuse. After Mother became pregnant with the couple's oldest child, the parties married in 1995. Their first daughter was born on September 22, 1995. The couple lived as a family with Mother's two older daughters, who were at the time ages 10 and 12. Although Father

did not adopt his step-daughters he was the means of support for the entire family. In June of 1998, the couple's youngest child was born.

¶ 7 Since the time of the parties' treatment in 1988, both have remained drug free. Father went to college, obtained an engineering degree and at the time of the hearing he was employed as a project manager earning $112,000 per year. Mother earned a college degree in accounting, but was not employed outside the home as she was responsible for most of the day-to-day care of the home and the children.

¶ 8 In the summer of 2003, Mother began communicating with Mr. VanWeert through a chat room or message board on the Internet. They progressed to exchange e-mails and instant messages. They arranged to meet in October of 2003 at an airport in Washington, D.C. Mr. VanWeert testified that he traveled to the United States from the Netherlands to visit and meet with Mother. The day he left for his trip his wife of 24 years was packing to leave their marital home. He traveled first to Amsterdam, and when he received confirmation of his wife's actions, he departed on his flight to Washington.

¶ 9 Mr. VanWeert was met by Mother in Washington and they commenced a sexual relationship. Mother left after the weekend to return home. Upon receiving additional confirmation of his wife's departure from the marital home and a hotel booking mix-up, Mr. VanWeert phoned Mother and made arrangements to take a bus to Pennsylvania. He stayed with Mother and her daughters at their home for the remainder of his two-week trip. Mr. VanWeert made a return trip to Mother's home in December of 2003, for 10 to 12 days, staying with her and the children. He returned again in May of 2004, for a week-long visit, and then Mother traveled with the children to the Netherlands in the summer of 2004 for an eight week visit.

¶ 10 Mr. VanWeert has a comfortable home in the Netherlands. His 16–year–old son lives with him and he has a 14–year–old daughter who lives nearby with her mother. Mr. VanWeert's extended family lives not far away and they interacted with Mother and her daughters during their visit. Mr. VanWeert indicated that should Mother be given permission to live in the Netherlands with her daughters, he would ask her to marry him. Mother testified if she resided in the Netherlands she would not work outside the home and would depend on Mr. VanWeert for support.

¶ 11 In considering the evidence offered, the trial court determined that "the children are more emotionally invested in their mother than they are in their father." Trial Court Opinion, 11/15/05, at 11. It correspondingly found "that emotionally, mother and Mr. VanWeert could provide stronger emotional support to the children than father can at this time." *Id.* The court remarked that this finding was made in view of Father's proposed custody arrangements, which included time with a baby-sitter or nanny in the early morning hours and after school.

¶ 12 The trial court acknowledged that "Mother has demonstrated a somewhat unstable emotional makeup," and that Mother's "approach to the breakup of her marriage and the almost instantaneous involvement with a foreign national, shows a lack of good judgment on her part." *Id.* at 12. The trial court remarked that Mother "obviously showed a lack of good judgment in involving herself in an Internet romance while she is still married to the father, and also knowing that she has two young daughters who will be affected by the eventual outcome of mother's romantic interest." *Id.* at 22. The trial court then

remarked that "the *Gruber* factors do not consider lack of judgment as a matter to be considered by the Court, other than how it may impact on the best interest of the children." *Id.* at 12. The trial court held that the despite the lack of good judgment on Mother's part significant advantages will accrue to Mother if she moved to the Netherlands and these advantages would then flow to the children.

¶ 13 In detailing the advantages, the trial court again cited to the fact that the children "are more deeply invested in mother than they are their father." *Id.* In regard to this connection the trial court noted that Father worked long hours during the course of the marriage while Mother was at home with the children. It found that "father in this case is at a disadvantage because he did what is expected of so many fathers," *id.* at 19, and that by working hard to provide for his family he became less connected to the children than Mother.

¶ 14 The trial court erred in finding that a move with Mother will be to the children's advantage based upon their bond with Mother, without considering whether it would be best for the children to remain with Mother here. The trial court recognized that in considering the matter it was placing Father at a disadvantage because of the lesser amount of time he spent with the children. The court then somehow concluded that because it would be in the best interest of the children to remain with Mother this fact should result in a grant of her petition to relocate to the Netherlands. The trial court failed to consider the clear option of continuing custody with Mother, but denying her petition to relocate. The court acknowledged the testimony of the director of Family Services who, pursuant to a court order, provided an assessment. The trial court noted that this witness recommended that the children remain with their mother in their current home where they are thriving, and that they continue to see Father on a regular basis as he provides a loving and stable influence in their lives. This witness opined that because the children are in critical developmental stages of their lives, a disruption of their current living situation would be detrimental to their further development of relationships. The recommendation ultimately made was that it would not be in the best interest for the children to be relocated out of this country and that the current custodial schedule remain the same. *See* N.T., 4/19/05, at 34. Despite the trial court's recount of this testimony, the court failed to give consideration to the opinion offered: that the children remain in Mother's custody in their current surroundings.

¶ 15 As further evidence of the advantages a move to the Netherlands will have on Mother and the children, the trial court cited to the fact that Mr. VanWeert lives in a nice home within a nice community, he has a good job and is interested in the children. The trial court further remarked that the culture in the Netherlands appears to be similar to American culture and the children will gain something by their exposure to a different culture and a different language.

¶ 16 We do not view these findings as evidence that a move will provide these children with any advantages. While it is not a negative that the home in the Netherlands is nice, and the man with whom they would be living is interested in the children, we fail to see how these are advantages where there is no evidence that the children are in a substandard home here and where here they have a father who is interested in their well-being. And, while exposure to another culture is certainly enriching, we found no evidence to support a finding that a move to a country

which is foreign to both Mother and children and which will cause these children to forgo their current culture and way of life is an advantage. *Contrast Goldfarb v. Goldfarb,* 861 A.2d 340 (Pa.Super.2004) (reversing trial court's denial of mother's petition to relocate to Israel where family moved here from Israel and mother would be returning to a familiar culture, two of the family's three children had been born in Israel, mother had extensive family support and better opportunities to continue her nursing career in Israel).

¶ 17 The move contemplated in this case would cause Mother and the children to be placed in a foreign land. The trial court in this case heard testimony of the differing laws in the Netherlands and in the United States with regard to drug usage and alcohol consumption and was made aware that the children would be required to live in a land in which English, the only language spoken by these children, is not the primary language. The court made no finding on how such facts would affect their current studies.

¶ 18 With regard to the impact the move would have on the children, the trial court noted that they each testified about their desire to go to the Netherlands with Mother. We have reviewed the testimony of the children. They spoke about their trip to the Netherlands and the good times they had there visiting various sites and meeting new people. However, it must be recognized that this move does not represent a vacation for these young children and their past experiences while vacationing in this foreign country may or may not be any indication of what their day-to-day life would be like in this land. While the children each expressed a desire to move with Mother, the trial court failed to acknowledge the results of the court-ordered assessment regarding the girls' expressed preference. The director of Family Services testified that the results of the as-

sessment caused her to conclude that the children's desire to move to the Netherlands was based on the fact that, as children, they want their mother to be happy. The witness remarked that the children would want to remain with Mother and see her happy, but that it would not be in their best interest to move away from Father.

¶ 19 The trial court also concluded that Mother's desire to move is not the result of a momentary whim. The trial court did not detail on what basis it made this finding, and it appears to be in conflict with the trial court's repeated acknowledgment of Mother's exercise of bad judgment in beginning this relationship. Contrary to the trial court's conclusion that this poor judgment is not part of the *Gruber* analysis, we find that it is relevant here to demonstrate that Mother's romantic involvement with a total stranger resulted in what can be described as a "whim" which in turn led to her desire to move herself and the children to a new country. We too find reason to question the trial court's failure to comment on the exercise of Mother's judgment in bringing a man into her family home for a two-week period of time only after sharing a brief weekend with him when he traveled to the United States after conversing with Mother for few months over the Internet. The trial court concludes that "mother is concerned about the welfare of the children," Trial Court Opinion at 15, but we find evidence that Mother's concern is with her own romantic welfare. As result of Mother's romantic interest she seeks to move her young daughters overseas to live in another country, away from their father and life as they know it. The trial court failed to discuss the fact that Mother remained married to Father at the time of the sought move, and that she proposed to move these children into the home of another man to whom she is not married, or

engaged, based upon his promise to support Mother. The move authorized by the trial court will place Mother and the children in foreign country a great distance from their current home, with no support system save for Mr. VanWeert and the family he extends to them. The trial court failed to consider the impact on these children should Mother's romance fail.

¶ 20 The trial court also failed to consider the fact that a move into Mr. VanWeert's home for these young children will include the dynamic of quasi-step-siblings. More importantly, the trial court failed to comment on the fact that these children have lived their entire lives with their step-sisters. Although their step-sisters are now in college, one still commutes to college from home, and no inquiry was made into how the children's move to another country will impact the relationship and the bond that must exist between these children and their older step-sisters.

¶ 21 With respect to the second *Gruber* factor, the trial court found that both parents love their children and neither parent in seeking to move, or prevent the move, is acting out of malice or hatred. The trial court stated that it found no evidence that Mother is attempting to punish Father by seeking to move with the children and that "Mother clearly is proposing her move to The Netherlands to further her romantic interest with Mr. VanWeert." *Id.* at 14. The court specifically found that Father would miss the children if they moved, that he has a genuine desire to be a part of their lives, schooling and moral and religious upbringing. It ruled that Father was "not opposing the relocation out of maliciousness to his wife nor out of anger, but that he has a genuine desire to see his daughters grow and flourish." *Id.* at 15. This finding is supported by the record.

¶ 22 The third factor of the *Gruber* analysis was also employed by the trial court resulting in a conclusion that realis-tic substitute visitation arrangements can adequately foster an ongoing relationship between the children and Father. In this regard Mother did testify about means she would use to maintain contact between the children and Father. These included web camera setup, telephone contact and visits for school breaks and holidays. Mother also offered evidence regarding a camping trailer which would be made available to Father for three continuous weeks in the summer during visits to the Netherlands.

¶ 23 While the plans outlined by Mother do evidence a concerned effort by her to promote an ongoing relationship with Father, they fail to account for the viability of such contact. There was no testimony offered to show that phone and Internet contact was viable in view of the time differences which must exist in the different parts of the world. In a similar vein, there was no testimony offered that Father has the ability to take three weeks of consecutive vacation time to make use of the camper that was offered. There was testimony offered as to the shortened vacation/holiday periods enjoyed by children in the Netherlands and the days which would occupied by traveling the great distance involved, but the trial court discounted this fact and simply concluded that the breaks would provide "father with a significant opportunity to spend time with his children." *Id.* at 17. This conclusion is in sharp contrast to the conclusion reached in the court-ordered assessment. Therein it was found that these children, who are very young, need frequent contact with their father and that with months passing without physical contact, their present relationship with him would be disrupted. While "[a] change in visitation arrangements necessitated by geographical distances will not defeat a move which has been shown to offer real advantages to the custodial parent and the children," *Boyer v. Schake*, 799 A.2d 124, 129 (Pa.Su-

per.2002) (quoting *Gruber*), we find no evidence of any real advantage in the move to the Netherlands proposed by Mother in this case.

■ ¶ 24 In reviewing the trial court's decision we find fault with the court's grant of Mother's petition to relocate. We find this decision was erroneously based simply on the fact that Mother desires to move to promote her love interest and the corresponding conclusion that it is best for the children to follow Mother in promoting her desire because of their bond with her. While the record offers support for the trial court's conclusion that the children should continue to remain in their mother's custody, it does not follow that this decision should result in the grant of Mother's request to relocate. After careful examination of all the testimony offered and the detailed opinion of the trial court, we find no support for a conclusion that this move would be in the best interest of these children.

¶ 25 Accordingly, we affirm the grant of custody of the parties' children to Mother, but we reverse the order granting Mother's petition to relocate.