S.J.S., Appellant

v.

M.J.S., Appellee.

Superior Court of Pennsylvania.

Argued Feb. 13, 2013.

Filed Aug. 7, 2013.

Frederick N. Frank, Pittsburgh, for appellant.

Zanita A. Zacks–Gabriel, Erie, for appellee.

BEFORE: BOWES, J., LAZARUS, J., and COLVILLE, J.*

OPINION BY LAZARUS, J.

S.J.S. (Mother) appeals from the order of the Court of Common Pleas of Erie County denying her petition for primary custody of her two minor daughters, C.S. (born March 2002), and E.S. (born November 2004), and denying her request to relocate with them from Erie, Pennsylvania, to Buckingham, in Bucks County, Pennsylvania. After our review, we affirm.

Mother and M.J.S. (Father) were married in 2002. They separated in 2008 when the girls were ages 6 and 3. Throughout the marriage, Father worked from 6:00 a.m. to 2:30 p.m. during the week, and Mother worked from 3:00 p.m. to 9:00 p.m. During that time, Father was the primary caregiver. After the parties separated, the parties agreed to a custody arrangement. Mother's work schedule changed to four days a week, and for three years after separation, Father watched the girls two days a week and Mother's stepmother watched them two days a week. Mother and Father worked out alternating weekends and holidays, and Father enjoyed open telephone communication with the children.

On May 17, 2012, Mother mailed a notice of relocation to Father.[1] Father filed a complaint for shared custody on May 16, 2012, as well as an objection to the proposed relocation notice on May 29, 2012.

In June 2012, after a hearing before a custody conciliator, Mother and Father entered into a consent order for shared legal and physical custody of their children. Mother had primary physical custody, and Father had partial physical custody every other weekend, from Friday at 6:00 p.m. to Sunday at 6:00 p.m., and on Wednesdays from 3:00 p.m. until 8:00 p.m. Based on the parties' agreement, the Honorable John J. Trucilla issued an order dated June 13, 2012, which was entered on the docket on June 19, 2102. *See* Order of Court, 6/13/2012. Judge Trucilla deferred Mother's relocation request for trial.

---

* Retired Senior Judge assigned to the Superior Court.

1. Mother had mailed the notice on May 9, 2012, but had sent it to the wrong address.

Following trial, Judge Trucilla denied Mother's request for relocation and issued a final custody order providing that Mother would retain primary custody if she remained in Erie, but that if Mother chose to relocate, Father would be awarded primary custody and the parties by mutual agreement would arrange for Mother's partial custody periods. Mother appealed and filed a timely Statement of Errors Complained of on Appeal pursuant to Pa. R.A.P. 1925(b). The court issued its Pa. R.A.P. 1925(a) opinion on October 18, 2012. Mother raises fourteen issues for our review:

1. Whether the trial court erred in failing to give proper weight to the role of Mother as primary caretaker of the children, in determining that Mother should have primary custody of the children unless she relocates to Buckingham, Pennsylvania, but then failing to award Mother primary custody of the children in Buckingham, Pennsylvania?

2. Whether the trial court erred in emphasizing the stability of the children's relationships and lives in Erie, Pennsylvania as a main factor in denying Mother's request to relocate with the children, where the children will be experiencing a change in their school (1) if they live with Mother in Erie due to the fact that their prior school has closed, and (2) if they live with Father in Erie, as he is in a different school district than Mother?

3. Whether the trial court erred in disregarding the developmental needs of the children which are served primarily by Mother and the impact on the children's physical, educational and emotional development which would result from a transfer of primary custody to the Father, where the Father has no involvement with the children's schooling, school activities, friends, little to no involvement with their extracurricular activities, and no history of providing any extended care of the children over the past four years?

4. Whether the trial court erred in placing weight on the lack of "necessity" of the move to Buckingham, where the statutes and case law do not require the custodial parent to show that a move is necessary before relocation is granted?

5. Whether the trial court erred in determining that there are not adequate substitute partial custody arrangements that would preserve the relationship between Father and the children, where the children would have the opportunity to spend long weekends at least every other month, plus extended holidays and extended time in the summer with Father?

6. Whether the trial court erred in finding that factor five of 23 Pa.C.S. § 5337(h) and factor one of 23 Pa. C.S. § 5328(a) are neutral as to their application to either Mother or Father, where there is a clear pattern established that Mother acted to promote the relationship between Father and the children since the parties' separation, and where there is no allegation or evidence that Father has taken any steps to promote the relationship between Mother and the children?

7. Whether the trial court erred in emphasizing the emotional toll a relocation would have on the children if regular and consistent contact with Father is taken away and in failing to consider the emotional toll it would take on the children to be

removed from the primary care of Mother and the day-to-day contact and care provided by Mother if the children are not permitted to reside primarily with her?

8. Whether the trial court erred in determining that Mother's motives for the move to Buckingham were not based upon what is in the children's best interests, where Mother testified that she wanted the children to have better financial and educational opportunities and to have the opportunity to move out of the inner city into a suburban and family-oriented setting?

9. Whether the trial court erred in determining that factor ten of 23 Pa. C.S. § 5328(a) is neutral rather than heavily in favor of Mother, where Father has failed to attend or even participate in any area of the children's lives other than to provide brief periods of supervision, and where Mother has been solely responsible for the children's daily needs, medical needs and educational needs for four years since the parties separated?

10. Whether the trial court erred in failing to analyze both custodial options on equal ground, where there was no prior custody determination made by the court?

11. Whether the trial court erred in concluding that the best interests of the children would be served by awarding Mother primary custody on the condition that Mother remain in Erie, rather than analyzing both the residence of Mother in Buckingham and of Father in Erie on equal footing in an initial custody determination?

12. Whether the trial court erred in failing to conclude that it is in the children's best interests to reside with Mother in Buckingham, Pennsylvania?

13. To the extent the relocation factors apply to this case, whether the trial court failed to give proper weight to the facts that: Mother has no opportunity for advancement in employment at her current position; Mother testified that the house selected for the first year in Buckingham was selected where there would be opportunities to purchase a residence within the children's school district; and Mother is in a four-year relationship with her paramour with significant time spent together?

14. Whether the trial court erred in failing to apply the best interests analysis under 23 Pa.C.S. § 5323(a) to each proposed residence in the initial custody determination, and apply the relocation factors as just one corner of that analysis? [2]

At trial, the court heard testimony from Mother, from C.S. (the elder daughter, age 10), and from K.R., Mother's stepmother. The court also heard testimony from Dr. Stephen Barrett, an expert in school district evaluations, and from Mother's paramour, D.M.

The distance between Erie and Buckingham is approximately 7½ hours by car. Father, his family, and Mother's family reside in Erie. There is no dispute that the

---

**2.** We note that Mother's Statement of Questions Involved exceeds the two-page limit as set forth in Pa.R.A.P. 2116(a), which was effective at the time Mother filed her brief on November 21, 2012. On March 27, 2013, Rule 2116 was amended, effective May 26, 2013, removing the two-page limit, but noting that "[t]he appellate courts strongly disfavor a statement that is not concise." Official Note– Pa.R.A.P. 2116.

children are happy in Erie; they have strong and loving bonds with both parents as well as with their large extended family. Mother admitted that if relocation were granted, Father would be unable to visit frequently. Additionally, the trial court indicated its concern with Mother's motives for relocating across the state, pointing out that Mother acknowledged it was "to get away from [Father]" and to accommodate her "life partner," D.M., and his wish to be near both Philadelphia and New York City to pursue his desire to publish a novel. *See* 23 Pa.C.S.A. § 5337(i)(2) ("Each party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation.").

Mother met D.M. through an online board game two months after separating from Father. Mother and D.M. maintained a relationship for several years. The lease for the house D.M. rents in Bucks County lists him as the lessor and Mother and the children as "permanent guests." N.T. Trial, 7/25/2012, at 194. D.M. is an aspiring writer who has traveled extensively and whose income is from a family trust. As the trial court stated, he "is a privileged beneficiary of the wealth of his parents[.] . . . Quite simply, he has not grown up, nor does it appear that he is any rush to do so." Trial Court Opinion, 8/24/2012, at 9. The court expressed its reservations with respect to whether D.M. was capable or willing to "responsibly assist in the upbringing of two adolescent girls." *Id.*

Throughout trial, Mother explained that she wanted a "better" life for the children, proclaiming that Buckingham, Bucks County, could provide the children with a quality education and a suburban neigh-

borhood. Mother was reluctant to acknowledge that the suburbs of Erie or Pittsburgh could afford them as much, despite the fact one of the homes D.M.'s parents own is located in Pittsburgh. D.M. testified that, although not his top choice, he would live in Erie. *Id.* at 205.

Mother recognized that the children were happy and doing well in Erie, academically and socially. She acknowledged that C.S. had a wide circle of friends and her class had elected her to be the fourth grade class president. *Id.* at 155.

Mother currently earns $31,000 annually at her present job in Erie. She admitted that she did not have employment lined up in Buckingham, but stated she was scheduled for a second interview at a company in Buckingham. *Id.* at 144. Mother also testified that she would earn $36,000 if she were ultimately hired. *Id.* She admitted, however, that the difference in salaries would be negligible in light of the higher cost of living in Buckingham. *Id.* at 145.

Doctor Barrett testified to the quality of the Central Bucks School District, in particular Cold Spring Elementary School, the school in which Mother intends to enroll the children. Doctor Barrett opined that Cold Spring Elementary School is "one of the top schools in Pennsylvania" and exceeds academic expectations. *Id.* at 16.

C.S., the oldest child, testified that she understood the move would mean she would only see Father every other month, and her preference as to spending time with each parent would be to "keep it the same." *Id.* at 43. It was not lost on the court that C.S. was upset at the idea of not seeing Father each week.[3] The court noted that C.S. was upset, and C.S. stated

---

3. The court, with the parties' agreement, found it unnecessary to hear testimony from the younger child, E.S., as it would likely be duplicative and cause the child undue stress. *See* N.T., Trial, at 53–54.

that both she and Father were crying earlier that day. *Id.* at 52–53.

The Court: Would you want more time with your dad, less time with your dad, keep it the same? What would you want?

C.S.: Keep it the same. It's fine.

The Court: If you move, you understand that would change?

C.S.: Uh-hum.

The Court: What do you think about that?

C.S.: I would get to see him every other month, I think, and spend time with him.

The Court: Would you miss him?

C.S.: (Nods head.)

The Court: Yes?

C.S.: Yes.

The Court: Would that make you sad?

C.S.: Yes.

The Court: So, if that makes you sad, then why would you agree to want to move with your mom?

C.S.: 'Cause I want to move with my mom because I get to meet new people and have fun.

The Court: I mean, just watching you, I see that you're—you have tearing in your eyes.

C.S.: Yes.

The Court: Why? What's making you sad now?

C.S.: Well, that I wouldn't get to see my father like every day.

The Court: You see him every day now?

C.S.: Not really, but like we see him every Wednesday and every—basically the weekend.

The Court: You see him a lot?

C.S.: Uh-hum.

The Court: You would miss that time seeing him; is that right?

C.S.: Uh-hum.

*Id.* at 42–44.

K.R., Mother's stepmother, testified that she spends a lot of time with the children, caring for them in the summer. Although she supported Mother's decision to move to Buckingham, she acknowledged that she would miss the children, that the children would miss her, and that the children were happy in Erie. *Id.* at 55–60. K.R. also acknowledged that Father is very active with his children, that he is a good dad and that he loves his children. *Id.* at 60.

The court determined that Father's testimony, and that of the witnesses he identified in his pretrial narrative statement, was unnecessary as his fitness, competence and capability to parent were not at issue. Mother conceded that Father had a strong bond with the children, has been a consistent part of their lives since birth, and has a stable job and residence. She also stated that if the court denied relocation and she decided to relocate without the girls, she "would let [Father] have primary custodianship, . . .—I'd be open to that." *Id.* at 170.

■ Our scope and standard of review is as follows:

[O]ur scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We

may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court. *A.D. v. M.A.B.*, 989 A.2d 32, 35–36 (Pa.Super.2010) (citations and quotation marks omitted).

■ Recently, our Legislature adopted a new Child Custody Act ("Act"), effective on January 24, 2011. *See* 23 Pa.C.S.A. §§ 5321–5340. The new Act applies to "disputes relating to child custody matters" filed after the effective date of the new law. 23 Pa.C.S.A. § 5321. In *E.D. v. M.P.*, 33 A.3d 73, 76 (Pa.Super.2011), we held that the Act applied to any proceeding, including a petition for relocation, initiated by a *filing* made after the effective date of the Act. Here, Mother mailed her petition for relocation to Father on May 17, 2012. Father filed a complaint for shared custody on May 16, 2012; he also filed an objection to the proposed relocation notice on May 29, 2012. Because Mother initiated her relocation request after the effective date of the new Act and Father's complaint was filed after the effective date of the Act, the provisions of the new Act apply here.[4]

■ Mother asserts this is a novel case since there is no published decision applying the new Act to a relocation request where there has been no prior custody determination. Mother argues a court "cannot apply only the relocation factors to a case where it has not yet awarded primary physical custody to one of the parents, because the relocation factors take into account only those best interests related to relocation: 'a small corner of the best interest cosmos.'" Appellant's Brief, at 27–28, quoting *Collins v. Collins*, 897 A.2d 466, 472 (Pa.Super.2006) and *Kirkendall v. Kirkendall*, 844 A.2d 1261, 1265 (Pa.Super.2004). Additionally, Mother claims that the court erred in placing the burden of proof on her, and essentially "elevating the issue of relocation over the issue of primary custody." Appellant's Brief, at 17.

We address Mother's claims in issues 10, 11 and 14 first, as each challenges the court's dual relocation/custody analysis.

Although the Act has altered the custody and relocation analyses, the *Gruber* analysis[5] remains, *see* 23 Pa.C.S.A. § 5337(h)(6)-(8), as well as the best-interests analysis in a custody determination.

Here, there was no custody order in place prior to Mother's request for relocation. Prior to Mother seeking relocation, the parties had worked out custody arrangements to accommodate Mother's work schedule, with Mother being primary custodian. The matter was heard before a custody conciliator on June 13, 2012, and the parties entered into a consent agreement. Pursuant to that agreement, Mother had primary residential custody and Father had partial custody on Wednesday evenings and every other weekend. That agreement was entered as an order by the court, however the court and the parties acknowledged that both the custody and relocation matters would be tried before the court at the July 25, 2012 trial.

At the start of the trial, the court stated that it would assess the case under the sixteen custody factors set forth in section

---

4. The Act does not *require* notice of proposed relocation be filed with the court; it requires only that the notice be sent by certified mail. *See* 23 Pa.C.S.A. § 5337(c)(2). However, if the non-relocating party objects, that party must file an objection with the court within 30 days of receipt of notice. 23 Pa.C.S.A. § 5337(c)(3)(xi); (d). *See also E.D., supra* at 79–80.

5. *Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434 (1990).

5328 and under the ten relocation factors contained in section 5337. *See* N.T. Trial, *supra* at 1. The parties agreed to this prior to the start of trial. *Id.* Notwithstanding the fact that Mother agreed to proceed as such, she now challenges the court's dual analysis and argues the court elevated the relocation matter over the custody matter.

We find no error. Mother suggests that the court should have made a custody determination and then engaged in the relocation analysis, rather than, as here, combining the considerations and rendering an order that awarded primary custody contingent on Mother's ultimate decision on where she would reside.

Judge Trucilla provided two opinions in this matter, the first in support of the order denying relocation and awarding primary custody based on Mother's choice to remain in Erie or relocate to Buckingham, *see id.,* and the second in response to Mother's Rule 1925(b) statement. Trial Court Opinion, 10/18/2012. Both opinions set forth the relocation factors of section 5337[6] and the custody factors of section 5328,[7] and both opinions set forth a de-

---

6. **(h) Relocation factors.**—In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

    (1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.
    (2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.
    (3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.
    (4) The child's preference, taking into consideration the age and maturity of the child.
    (5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.
    (6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.
    (7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.
    (8) The reasons and motivation of each party for seeking or opposing the relocation.

    (9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.
    (10) Any other factor affecting the best interest of the child.
23 Pa.C.S.A. § 5337(h).

7. **(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those·factors which affect the safety of the child, including the following:

    (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
    (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
    (3) The parental duties performed by each party on behalf of the child.
    (4) The need for stability and continuity in the child's education, family life and community life.
    (5) The availability of extended family.
    (6) The child's sibling relationships.
    (7) The well-reasoned preference of the child, based on the child's maturity and judgment.
    (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

tailed and comprehensive analysis of each relevant factor as it applies to this case. Further, the two analyses are not entirely separate. In this case, the parties respected the quality of the opposing party's parenting. Mother acknowledged that if relocation were denied and she chose to move to Buckingham, she was amenable to Father having primary custody. *See* N.T. Trial, *supra* at 170. Similarly, Father agreed to maintain the current custody arrangement if Mother chose to remain in Erie. Under these circumstances, it was suitable to engage in a dual analysis and enter one order.

As far as Mother's claim that the court elevated relocation over custody, we disagree. The court specifically stated in its opinion in support of the order that it placed no greater emphasis on the relocation factors simply because they were analyzed first. Trial Court Opinion, 8/24/2012, at 14. "The Court considers the § 5337(h) factors together with the broader best interests of the children in mind in assessing which party shall be ordered primary physical custodial and whether Mother's request for relocation will be permitted." *Id.* Under these circumstances, it is unrealistic to compartmentalize the issues.

In *Collins v. Collins*, 897 A.2d 466 (Pa.Super.2006), the trial court awarded father primary custody despite finding mother was the better parent; the court found mother's status as the better parent was dependent upon the location of her residence. We reversed, finding the court's conclusion that father offered a more stable environment was not supported in the record and, therefore, the court committed an error of law by "dissociating the issue of primary custody from the issue of relocation, rather than keeping both inquiries under a single umbrella of best interests of the children[.]" *Id.* at 473. In *Collins*, mother's proposed relocation was to her parents' home in Utah. The court found this was an unstable residence because it inferred it was a temporary situation. The trial court found father's living situation to be more stable despite the likelihood of bankruptcy and mortgage foreclosure. Our Court stated: "Given the uncertainties surrounding Father's finances and their possible implications for the family home, the trial court's conclusion that Father offered a more stable home environment than did Mother is unreasonable." *Id.* at 475.

This is not the situation before us. Here, the trial court engaged in the proper analysis using both relocation and custody factors, with the best interest standard as the guide. The court may have concentrated on relocation factors, but this was because it recognized that the custody arrangement was in dispute only in the event Mother chose to relocate. The parties recognized this as well. Contrary to Mother's claim, the court did not disregard an anal-

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.
(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.
(11) The proximity of the residences of the parties.
(12) Each party's availability to care for the child or ability to make appropriate childcare arrangements.
(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.
(14) The history of drug or alcohol abuse of a party or member of a party's household.
(15) The mental and physical condition of a party or member of a party's household.
(16) Any other relevant factor.
23 Pa.C.S.A. § 5328(a).

ysis of both custodial settings. In fact, it is clear the court's focus was upon which parent could provide a familial setting that would serve the children's best interests. The evidence of record supports the trial court's findings. *See E.D., supra; cf. Fuehrer v. Fuehrer*, 906 A.2d 1198 (Pa.Super.2006) (trial court erred in finding move to another country with mother would be to children's advantage without considering whether it would be best for children to remain with mother in the United States).

■ Finally, as the party proposing relocation, Mother bears the burden of proving relocation will serve the children's best interests. *See* 23 Pa.C.S.A. § 5337(i). Each party, however, has the burden of establishing "the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation." 23 Pa. C.S.A. 5337(i)(2). The court did not err in placing the burden on Mother to show that relocation was in the children's best interests. The court found that relocation to Buckingham would accommodate D.M.'s interests. The benefits to the children, the suburban neighborhood and excellent school, are not exclusive to Buckingham and do not outweigh the detrimental effect on Father's time and relationship with the children. Further, Mother did not meet her burden of establishing the integrity of her reasons for leaving Erie. The trial court was aware of Mother's statement that she wanted to get away from Father. The court also noted that moving to Buckingham with D.M. would alleviate some of Mother's financial concerns, and it noted Mother's interest in remaining with D.M. and traveling with him.

As far as Father's motives for opposing relocation, the parties do not dispute that he sought only to preserve his relationship with the children. He also sought to preserve the children's relationship with his and Mother's extended families. The record bears this out, and we find no abuse of discretion.

■ In issue 1, Mother argues the court failed to give proper weight to her role as primary caretaker. We disagree. The court noted that Mother was the primary caretaker, especially in recent years, and that she took the girls to their activities, school functions and medical appointments. N.T. Trial, *supra* at 67–81; Trial Court Opinion, 8/24/2012, at 21. The trial court acknowledged Mother's role as primary custodian, and concluded that this factor favored Mother. However, the court determined that this factor did not outweigh other factors in the best interest analysis, in particular the fact that the children's relationship with Father.

■ In issue 2, Mother claims the court erred in emphasizing the "stability of the children's relationships in Erie" when the children will be experiencing a change in their school whether they live in Erie with Mother or with Father. If they stay in Erie with Mother, the girls will attend a different school since theirs has closed, and if they live with Father in Erie, they will attend a different school because he resides in a different school district than Mother. We find no error. The relationships the court referred to were those between the girls and their Father and their extended families. A change in schools might alter their friendships to an extent, but the primary concern was the familial relationships. Additionally, even though the girls' school had closed, if they remained in Erie with Mother, many of the girls' school friends would be attending a new school with them.

■ In issues 3, 7 and 9, Mother argues that the court erred in disregarding the developmental needs of the children if Father were to be primary custodian "where

the Father has no involvement with the children's schooling, school activities, friends, little to no involvement with their extracurricular activities, and no history of providing any extended care of the children over the past four years[.]" Appellant's Brief, at 21. She claims the court disregarded this factor in its custody determination, when it determined it was neutral rather than weighted in favor of Mother. *See* 23 Pa.C.S.A. § 5328(a)(10). She also claims the court erred in emphasizing the emotional toll relocation would have on the children and failing to consider the emotional toll on the children were they to be removed from the primary care of Mother. We find no error.

First, we agree with the court's assessment that Mother has viewed her primary caregiver role in a vacuum. As Mother acknowledged, she has had received considerable help from Father and from her stepmother, and readily conceded at trial that Father was a fit and caring parent, and capable of being primary custodian. Mother admitted that the children had a strong bond with Father and their families in Erie. Further, it is clear that Father has been a consistent and stable parental figure in the girls' lives. Additionally, as both Mother and D.M. testified, it is possible for them to remain in the Erie area and spare the children emotional turmoil, and, if this were the case, Mother would remain primary custodian. Accordingly, this claim warrants no relief.

▪ Next, in issue 4, Mother claims the court erred in weighing the lack of "necessity" for the move to Buckingham. In examining the need for stability and continuity in the children's education, family life and community life pursuant to section 5328(a)(4), the court stated it was not "absolutely necessary" that Mother relocate. *See* Trial Court Opinion, 8/24/2012, at 22.

The court's focus was on the emotional toll the girls would face. The court stated:

> Instantly, the need for stability and continuity in the children's lives is especially pronounced. Upon presentation of the evidence, this Court is convinced that the children's lives would be traumatically upset by relocation. The children's current bond with Father is strong and is important in their lives, and to disrupt that bond would certainly negatively impact the children. Basically, the children's entire lives are centered in Erie.... All of the children's friends are in Erie, all of the children's family is in Erie, the children's schoolmates are in Erie, and all of the children's familiar surroundings are in Erie. Moreover, Mother has not convinced this Court that her relationship with [D.M.], which is the driving force behind this relocation request, will be a permanent one.... Were this Court to grant Mother's request to relocate and then Mother and [D.M.] were to break apart their relationship, the children's lives would be thrown into complete turmoil. This Court will not risk putting the children in such a situation, especially in a case where, as here, the children's lives in their current location are completely healthy and normal.

*Id.* at 22.

The trial court was of the opinion that Mother and D.M. were placing a premium on their relationship and their own desires, with "only somewhat collateral consideration" for the girls' best interests. *Id.* After reading the testimony at trial, this Court reluctantly agrees. As this Court stated in *Fuehrer, supra:*

> [W]e find evidence that Mother's concern is with her own romantic welfare. As a result of Mother's romantic interest she seeks to move her young daughters overseas to live in another country, away

from their father and life as they know it. . . . and that [Mother] proposed to move these children into the home of another man to whom she is neither married, or engaged, based upon his promise to support Mother.

906 A.2d at 1203–04.

We have similar concerns. Though it is understandable that Mother would want a "better" life for her children and a way out of her financial worries, this cannot occur at the expense of Father's relationship with his daughters. Unlike the trial court in *Fuehrer, supra,* the trial court here did consider the impact on the children should Mother's romance fail. *See* N.T. Trial, *supra* at 225; *see also* Trial Court Opinion, 10/18/2012, at 7.

In issue 5, Mother claims that the court erred in concluding that there were not adequate substitute partial custody arrangements that would preserve Father's relationship with the children. Mother's claim is meritless. Mother's offer of proposed extended custody periods during holidays and summer vacations is not a realistic substitute for twice-weekly consistent contact between Father and children. Our review of the record does not indicate that the children are more deeply invested in their relationship with Mother than they are with Father. As the trial court recognized, this was clear from C.S.'s own testimony. *See* N.T. Trial, *supra* at 43–44. *See also C.M.K. v. K.E.M.,* 45 A.3d 417 (Pa.Super.2012) (mother failed to prove 68–mile relocation, together with related modification of parties' custody arrangement, was in child's best interest where child and father had strong support system in present location from extended family, child was excelling academically, child had no established support system at proposed new location, and mother's proposed custody arrangement would eliminate weekdays that had been critical for providing child opportunity to bond with father and extended family).

Next, in issue 6, Mother argues the trial court erred in finding that factor five of 23 Pa.C.S. § 5337(h) and factor one of 23 Pa.C.S. § 5328(a) are neutral as to their application to either Mother or Father, where there is a clear pattern established that Mother acted to promote the relationship between Father and the children since the parties' separation, and where there is no allegation or evidence that Father has taken any steps to promote the relationship between Mother and the children. We find no error. Although the court found Mother's expressed intention to move away from Father "somewhat troubling," it did not conclude from this that Mother established a pattern of conduct to thwart Father's relationship with the children. The court acknowledged that Mother's cooperation was "commendable" and that she "accommodated the children's custody time with Father consistently." Trial Court Opinion, 8/24/2012, at 17. The record supports the court's findings that both parties were instrumental in facilitating the relationship with the opposing party. As such, the court's finding that these factors were neutral to both parties was not error.

In issues 8, 12 and 13, Mother argues that the trial court erred in determining that her motives for the move to Buckingham were not based upon what is in the children's best interests, and that the court failed to give proper weight to: Mother's lack of opportunity for advancement in her current position and the fact that Mother's relationship with D.M. has been consistent for four years. She argues that her motives were to improve their financial status and raise the children in a good school in a suburban setting. These claims, too, are meritless. As noted

above, Mother did not establish that she had secured employment in Buckingham. Her prospects were speculative at best. The court contrasted this with Mother's fifteen-year history of employment at a company in Erie with a steady and secure income. Further, the court recognized Mother's four-year relationship with D.M., but also noted there was no engagement or plans to marry. Mother's financial situation, as that of the children, would be entirely dependent on Mother's relationship with D.M. This claim is unavailing.

■ Our concern in any custody or relocation matter is the best interest of the child, which considers all factors, on a case-by-case basis, that legitimately affect a child's physical, intellectual, moral, and spiritual well-being. *See Saintz v. Rinker*, 902 A.2d 509, 512 (Pa.Super.2006). No doubt, the cost and logistics of Father maintaining contact with his daughters from across the state would weigh against relocation unless other factors militated strongly in favor. We agree with the trial court that there is little to favor relocation here. The children are doing well in school and in their activities, they have a strong bond with their Father and their extended families in Erie, Mother's employment prospects in Buckingham are nebulous at best, and Mother's motives for moving do not appear to be driven by her children's best interests.

After our review of the record, the parties' briefs, and the relevant law, we believe that Judge Trucilla carefully analyzed the statutory factors with respect to custody and relocation, and we find no error or abuse of discretion in his determination. *See A.D., supra.*

Order affirmed.