# Castillo v. Lopez

C.P. of Monroe County, No. 8586 CV 2012; 1023 DR 2012

*Brandie Belinger*, for plaintiff.
*Robert Saurman*, for defendant.

HIGGINS, *J.*, July 9, 2014—This matter is before the court on defendant Jhantteil Lopez' ("mother") request to relocate with the parties' minor child, Sophia Castillo, ("Sophia") born on October 3, 2010. On October 10, 2012, plaintiff, David Castillo ("father") filed a complaint in custody seeking an order for primary physical custody

of Sophia. After a custody conciliation conference held and on November 9, 2012, this court entered an order providing the parties with shared legal and physical custody, with mother enjoying primary physical custody and father enjoying weekdays from 4:30 p.m. until 9:00 p.m. and every Sunday at a time to be agreed upon by the parties. On October 28, 2013, mother filed a petition for modification to permit Sophia to be returned during the weekdays at an earlier time due to a disruption in her schedule. After another custody conciliation conference held, an order was entered on November 18, 2013, providing the parties with shared legal and physical custody, with mother enjoying primary physical custody and father enjoying weekdays from 4:30 p.m. until 8:00 p.m. and alternate weekends beginning at 5:00 p.m. and ending on Sunday at 5:00 p.m. mother now seeks to relocate with Sophia to the Scranton/Wilkes-Barre area in northeast Pennsylvania. We held an evidentiary hearing in this matter on June 26, 2014, and we are now prepared to rule on mother's request to relocate.

The Pennsylvania legislature has defined elements, which are to be considered in custody cases. The statute, in relevant part, is as follows:

(a) Factors. — In ordering any form of custody, the court shall those factors which affect the safety of the child, including the following: determine the best interest of the child by considering all relevant factors, giving weighted consideration to

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child. (3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from

abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. §5328(a).

As the Pennsylvania courts have interpreted, the statute requires that in any custody case, our paramount concern must be for the best interest of the child after considering all factors set forth above. *M.O. v. J.T.R.*, 85 A.3d 1058 (Pa. Super. 2014). As the best interest of the child is a vague concept, we will consider all relevant factors affecting the child's well-being. *L.A.L. v. V.D.*, 72 A.3d. 690 (Pa. Super. 2013)(citations omitted). Since we must conduct a case-by-case analysis, we will make its determination based solely on the particular facts and circumstances of each case. *S.J.S. v. M.J.S.*, 76 A.3d 541 (Pa. Super. 2013).

Since mother filed a relocation notice, we must consider additional factors when "determining whether to grant a proposed relocation." 23 Pa. C.S.A. §5337(h) which are as follows:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's

physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

The burden of proof lies with the party proposing the relocation to establish that the relocation will serve the

best interest of the child as shown under the factors set forth above. 23 Pa. C.S.A. §5337(i). Moreover, "each party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation." *S.J.S., supra*, 76 A.3d at 551 (citation omitted).

In conducting our analysis based upon the above factors, we conclude that mother's request to relocate to Scranton/Wilkes-Barre should be denied. Under §5328(a) we find that factors 1, 2, 6, 7, 8, 9, 10, 11, 12, 14 and 15 are neutral and favor both parents equally. Factor 16 is not applicable. We find that since the parties' extended families are located in Monroe County, factors 4 and 5 favor father. Also, Father testified at hearing that he will accommodate mother's schedule in caring for Sophia, including picking her up from day care if she is sick. On the other hand, we find that factors 3 and 13 favor mother. Mother testified that she performs Sophia's daily routine and cares for all her needs. Mother also appears to cooperate with father. Accordingly, we believe that factor 13 favors mother.

The parties appeared before the court and seemed to be able to communicate with each other and coordinate drop off and pick up times for physical custody exchanges. Mother complained that father is sometimes aggressive and screams at Sophia. Father related that during the Christmas holiday he allowed mother to take Sophia to New York City during a period of his physical custody and he wanted to have that time back. Father also stated that he sometimes yells at Sophia, although he tries to talk to her first to discipline her. Overall, the parties seemed genuinely concerned with Sophia's well-being and they appeared to cooperate with each other to that end.

In considering the relocation of mother with Sophia, we must look to the nature, quality, extent of involvement and duration of Sophia's relationship with father. Father testified that he enjoys seeing Sophia every day. The periods of partial physical custody visitation between Father and Sophia has been very good. Father testified that he does not want to be a weekend father. Father indicated that he wants to see Sophia every day and he wishes to provide for her needs. We have no doubt that father spends quality time with Sophia.

Mother stated that from January 2014 until May 2014, father did not see Sophia daily. However, father indicated that he wants to be in Sophia's life every day. Father was playing arena football to see if her could make it in the National Football League (NFL). He stated that if he could have entered the NFL, he could have provided very well for Sophia's needs. Father testified credibly that he was loves being involved in Sophia's life and he does not want to only have weekend visitations with her. Father appears to have a strong and loving relationship with Sophia.

We also believe that Mother has a close relationship with Sophia. Mother has provided for Sophia's daily needs since she was born. Both father's and mother's parents assist them with care for Sophia. Consequently, we find that both parents have enjoyed quality involvement in Sophia's life.

We must next examine Sophia's age, developmental stage, needs and likely impact the relocation will have on her physical, educational and development. Sophia is a 3 year old girl. Sophia is not in school yet and we believe that the impact of relocating would be minimal. Mother has not yet secured a residence in the Scranton/Wilkes-

Barre area, however, her boyfriend lives in mountain top, a suburb of Wilkes-Barre. Father raised concerns about the safety of the Wilkes-Barre area. Father indicated that all of the parties' family members live in Monroe County and Sophia is doing well. Father is greatly concerned that he will not be able to see Sophia on a daily basis and he believes that it is important to see her daily. Father testified credibly that he desire a strong relationship with Sophia.

There have been no issues raised about Sophia's physical or emotional development. Further, we will not consider Sophia's preference due to her young age. Nevertheless, we must consider the feasibility of preserving the relationship between Sophia and father, the nonrelocating parent. The distance between Scranton/Wilkes-Barre and Monroe County is not extreme in distance, approximately 50 miles. Although this distance may seem insignificant, we believe that father is entitled to preserve his relationship with Sophia. Both of Sophia's parents impressed this court that each has a strong and loving bond with her. However, father stated that he wishes to maintain a daily relationship with Sophia which will be difficult given the distance between the two households, if mother is permitted to relocate. Although he may have extended weekend and summer visits, we are not convinced that this arrangement will benefit Sophia's relationship with father. We must consider what is in Sophia's best interest.

We believe that stability, emotional development and nurturing are primary considerations in our determination. Both grandparents of Sophia are located in Monroe County. Sophia has lived in mother's parents' home since her birth. There is ample evidence that both mother and father's family have helped in raising Sophia. Also, there are no family members or other friends located in the Scranton/

Wilkes-Bane area. Mother testified that she would place Sophia in child care located in her work building during her working hours. Mother recently secured a position with the Social Security Administration in Wilkes-Barre, PA. Father testified that he is willing to assist Mother with child care while she is working. Mother seeks the relocation to reduce the drive time for her and Sophia. Clearly, the relocation would benefit mother and her drive time, however, we must consider what is in Sophia's best interests. We find that the feasibility of maintaining a close relationship between Sophia and father would not be preserved by granting mother's request to relocate. Although the relocation would benefit mother, we are not convinced that Sophia's best interest would be served in the relocation. Father enjoys daily contact with Sophia which we believe cannot be substituted through weekend visits. Mother also stated that her mother assists in child care for Sophia. We are concerned that mother would not have the support for child care in the Scranton/Wilkes-Barre area.

Finally, in considering whether it is in Sophia's best interest to relocate, we look to mother's motives for such relocation. We believe that mother's motives are pure, however, we also find that father's motives for opposing the relocation are also pure.

In conclusion, we find that the factors weigh more heavily against mother relocating to the Scranton/Wilkes-Barre area. We make this determination to deny the relocation after careful review of the record and evidence. While no one factor alone outweighs any other factor, we must consider all the factors together to determine what is best for Sophia. The support system in Monroe County is

a factor which we consider in light of Sophia's tender age. We believe that it is not in Sophia's best to relocate with mother to the Scranton/Wilkes-Barre area. In light of the foregoing, we enter the following order.

## ORDER

And now, this 9th day of July 2014, following custody hearing held on June 26, 2014, where the parties were represented by counsel, it is hereby ordered that defendant Jhantteil Lopez' request for relocation is denied. The following custody order shall supersede all prior custody orders with respect to the minor child, Sophia Castillo, born October 3, 2010.

### 1. SHARED LEGAL CUSTODY

Mother and father shall share legal custody of the minor child. For purposes of this recommendation, "shared legal custody" shall mean:

(a) All decisions affecting the child's growth and development, including but not limited to education, choice of school, medical and dental treatment, religious training, athletic pursuits and extracurricular activities shall be considered major decisions, and shall be made by the parties jointly after discussion and consultation with each other with a view toward obtaining and following a harmonious policy in the child's best interest;

(b) Each party agrees to keep the other informed of the progress of the child's education and social adjustment. Each party agrees not to impair the other party's right to shared legal or physical custody of the child. Each party agrees to give support to the other in the role as parent and take into account the consensus of the other for the physical and emotional well-being of the child with the

recognition that their life styles may be different;

(c) While in the presence of the child, neither party shall make or permit any other person to make any remarks or do anything which would in any way be construed as derogatory or uncomplimentary to the other parent. It shall be the express duty of each parent to uphold the other parent as one whom the child should love and respect;

(d) It shall be the obligation of each parent to make the child available to the other in accordance with the following schedule and to encourage them to participate in the plan hereby set forth;

(e) Each parent shall have the duty to notify the other of any event or activity that could reasonably be expected to be of significant concern to the other parent or to the child;

(f) The parents shall communicate with one another concerning any parenting issues requiring consultation and agreement regarding a proposed modification of the custody schedule which may, from time to time, become necessary, and shall specifically not use the child as a messenger at any time. Neither party shall discuss with the child any proposed changes to this schedule or any other issue requiring consultation and agreement prior to discussing the matter and agreement with the other parent;

(g) With regard to any emergency decisions which must be made, the parent with whom the child is physically residing at the time shall be permitted to make a decision necessitated by the emergency without consulting the other parent in advance; however, that parent shall inform the other of the emergency and consult with him or her as soon as possible. Day to day decisions of a routine nature

will be the responsibility of the parent having physical custody at that time;

(h) Mother and Father agree to share complete and full information from any doctor, dentist, teacher or other authority, and each parent may have copies of any reports given to them as a parent. Each parent shall also request any authority to forward copies to both parents at their respective addresses. Such documents include, but are not limited to, medical reports, athletic and school reports, birth certificates, etc. Both parents may and are encouraged to attend conferences and activities with the child. Both parents shall be listed with any school or day care center as parents to be contacted in the event of an emergency and to be notified regarding school events. Mother and father agree to share copies of any school notices in a timely fashion;

(i) Both parents shall attempt to avoid scheduling any activities or appointments for the child which would require his/her attendance or participation during the time when he/she is scheduled to be in the physical custody of the other parent without the parent's prior approval; however, both parents agree to cooperate and be flexible in accommodating the child's scheduled activities.

2. PHYSICAL CUSTODY

Mother shall have physical custody of the minor child, Sophia, age 3, under and subject to father's periods of partial physical custody as follows:

(a) Weekdays beginning at 4:30 p.m. until 7:30 p.m.;

(b) Alternating weekends beginning Friday at 5:00 p.m., when father shall pick the minor child up at the Tender Heart Child Care and Learning Center and ending

on Sunday at 5:00 p.m., when Mother shall pick up the minor child at Dunkin Donuts parking lot located in Marshall's Creek, Pennsylvania;

(c) Any other days and timed upon which the parties shall mutually agree;

## 3. HOLIDAYS

The parties shall alternate the major holidays. The alternating holiday schedule shall include the holidays of New Year's Day, Presidents Day, Easter, Memorial Day, Fourth of July, Labor Day, and Thanksgiving. Mother shall have partial custody on Mother's Day and father shall have partial custody on Father's Day. Those periods of partial custody for which no times for exchange were heretofore scheduled shall begin at 9:00 a.m. and end at 8:00 p.m. These periods of Holiday custody shall begin with father enjoying the 2014 Labor Day holiday.

The parties shall alternate Christmas. Mother shall have physical custody of the child from Noon on Christmas Eve continuing until Noon on Christmas Day. Father shall have physical custody of the child from Noon on Christmas Day until Noon on December 26th. The above period shall alternate each and every year.

In the event that a holiday to which father/mother is entitled shall fall within a day prior or subsequent to weekend period of partial custody to which father/mother would also be entitled, that period of weekend partial custody shall be extended to include father's/mother's period of holiday partial custody.

## 4. TRANSPORTATION

In order to facilitate the exchange of partial custody

of the minor child, the exchange point will be at the Dunkin Donuts parking lot located in Marshall's Creek, Pennsylvania, unless otherwise provided for in this order. The minor child shall be transported with an appropriate car seat which complies with the laws of the Commonwealth of Pennsylvania in the back seat of the motor vehicle.

## 5. TELEPHONE ACCESS

Each parent, such parent shall allow the other parent to have private, liberal and reasonable telephone access with the minor child during that parent's period of partial custody. This shall include the child initiating such contact. Reasonable telephone access shall be construed to be during the normal waking hours of the child, emergencies excepted. If the calling parent leaves a message at the residence of the custodial parent, custodial parent shall require the child to return the telephone call to the non-custodial parent.

## 6. SUMMER VACATIONS

With respect to summer vacations, mother and father shall each be entitled to a total of two (2) weeks of uninterrupted, non-consecutive partial physical custody with the minor child, provided they give the other party thirty (30) days prior written notice of their intention to exercise that right, which periods shall be taken in one week segments beginning Sunday at noon and ending Sunday at noon. Each parent shall provide to the other parent the telephone number and address where they will be exercising their period of vacation custody.

## 7. NOTICE: CHANGE OF RESIDENCE OR RELOCATION

Before a party may relocate the children change the

144

residence of the children in a manner which significantly impairs the ability of the other individuals with custody rights to the children to exercise those rights, the party must comply with the requirements and obligations of Pennsylvania's Custody Law set forth in 23 Pa. C.S.A.§5337.