J. S14001/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| S.A.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| S.C.C., | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 1422 MDA 2015 |
| | : | |
| H.R. | : | |

Appeal from the Order Dated July 20, 2015,
in the Court of Common Pleas of Columbia County
Civil Division at No. 2010-CV-0001570-CU

BEFORE:  FORD ELLIOTT, P.J.E., PANELLA, J. AND STEVENS, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED FEBRUARY 16, 2016**

S.C.C. ("Mother") appeals from the order dated and entered on July 20, 2015, in the Columbia County Court of Common Pleas, Civil Division, granting S.A.M. ("Father") the right to relocate E.M. ("Child"), born in May of 2008, from Reading, Pennsylvania, to Sweeny, Texas, pursuant to § 5337(h) of the Child Custody Act ("the Act"), 23 Pa.C.S.A. § 5337(h).  We affirm.[1]

---

* Former Justice specially assigned to the Superior Court.

[1] H.R. is the Maternal Grandmother and was granted leave to intervene in October 2014 by the trial court.  She did not file a separate notice of appeal but has filed a brief as appellee, to which Father was granted permission to respond.

The relevant facts and procedural history of this case are as follows. Mother and Father are the biological parents of Child. They never married and separated within a week or two after Child's birth in May 2008. (Trial court opinion, 8/21/15 at 3.) Father resides in a two-bedroom apartment in Reading, Berks County, Pennsylvania. (*Id.* at 2.) He is employed by Aramark and makes a modest income. (*Id.* at 3.) Mother resides with her boyfriend of two years in a residential area in Berwick, Columbia County, Pennsylvania. (*Id.*) During the week, she works eight to ten hours for a private cleaning service, and on Saturday or Sunday, she works a 12-hour shift at Wise Foods. (*Id.*)

Mother has two other minor children, M.G. and M.C. (together, "Half-Siblings"). (*Id.*) M.G.'s father is incarcerated in Maryland. (*Id.*) M.C.'s father lives in Berwick but has never had any contact with M.C. (*Id.*) Neither father pays child support. (*Id.*) Half-Siblings reside with Maternal Grandmother, who lives approximately two blocks away from Mother. (*Id.*)

This custody matter began on August 26, 2010, when Father filed a complaint for custody, seeking primary physical custody of Child. On November 15, 2010, the trial court issued an order, awarding primary physical and legal custody of Child to Mother and partial physical custody of Child to Father. On April 7, 2011, the trial court modified the existing order, awarding primary physical custody of Child to Mother, splitting legal custody between the parents, and granting Father periods of partial physical custody

to take place every other weekend, on designated holidays, and each summer for one week. On June 3, 2011, Father filed exceptions to the custody arrangement. On February 2, 2012, the trial court modified the existing order, increasing Father's partial physical custody of Child during the summer to a period of four weeks.

In August 2013, Mother began experiencing "emotional" problems, which she and Maternal Grandmother characterized as depression. (*Id.* at 4.) Consequently, thereafter Child began living primarily at Maternal Grandmother's residence. (*Id.*) In light of these events, on August 21, 2013, Father filed a petition for special relief, seeking primary physical custody of Child. On September 17, 2013, the trial court issued an order, effectively reversing the existing custody arrangement such that Father obtained primary physical custody of Child while Mother was given partial physical custody to take place every other weekend, on designated holidays, and each summer for a period of four weeks. Further, the order specifically granted Maternal Grandmother the right to exercise Mother's custody rights if Mother could or would not do so. (*Id.*) Subsequently, Child began living with Father in Reading. (*Id.*)

On September 16, 2014, Maternal Grandmother filed a petition to intervene pursuant to Pa.R.C.P. 2327, and on October 16, 2014, the trial court granted Maternal Grandmother leave to intervene. On October 21, 2014, Maternal Grandmother filed a petition to modify custody, seeking

partial physical custody of Child. In her petition, Maternal Grandmother argued that she stood *in loco parentis* to Child, averring that, at the time the September 17, 2013 order was entered, Child had been residing at her residence for a period in excess of three months and that she had assumed and was fulfilling the role of Child's parent. (Maternal grandmother's petition for modification, 10/21/14 at 2 (unpaginated).) On February 20, 2015, the trial court issued an order, effectively entitling Maternal Grandmother to Mother's custody rights. (Trial court opinion, 8/21/15 at 4.) On March 13, 2015, Father filed exceptions to the trial court's ruling.

On May 13, 2015, Father filed a notice of proposed relocation, seeking the right to relocate Child from Reading to Sweeny, Texas, his hometown. Father stated that the reason for the proposed relocation was so that he and Child could be near his family, which encompasses his parents, a brother and two sisters, multiple nieces and nephews, grandparents, and great-grandparents, almost all of whom live within a 30-mile radius of Sweeny. (*Id.* at 5.) On May 15, 2015, Maternal Grandmother filed a counter-affidavit to the proposed relocation. On May 20, 2015, Mother filed a notice of intention to reassert custody/visitation rights, and then, on May 29, 2015, she, too, filed a counter-affidavit to the proposed relocation.

On July 15, 2015, the trial court held a hearing on Father's exceptions and notice of proposed relocation, and Mother's notice of intention to reassert custody/visitation rights. At the hearing, Mother, Father, and

Maternal Grandmother each testified on his or her own behalf. R.M. ("Paternal Grandfather") also testified in support of Father. On July 20, 2015, the trial court issued the underlying order, awarding primary physical and legal custody of Child to Father and granting Father the right to relocate Child to Sweeny. The trial court's order also awarded Maternal Grandmother shared legal custody of Child during her periods of partial physical custody in the summer, on Christmas, and during spring break, and granted Mother partial physical custody, as to be agreed upon between her and Maternal Grandmother. On August 10, 2015, Mother filed a timely notice of appeal but failed to simultaneously file a concise statement of errors complained of on appeal, in contravention of Pa.R.A.P. 1925(a)(2)(i) and (b). Thereafter, on August 20, 2015, Mother filed a concise statement of errors complained of on appeal.[2]

On appeal, Mother raises six issues for our review:

1. Did the trial court commit an error of law in failing to take into consideration the bond between [Child] and [Half-Siblings]?

2. Did the trial court commit an error of law in failing to consider the bond between the maternal family and [Child], which will be broken due to the granting of the relocation petition allowing [Child] to move to Texas?

---

[2] Although Mother failed to comply with Pa.R.A.P. 1925(a)(2)(i) and (b), relating to children's fast track appeals, we decline to dismiss or quash her appeal. *See In re K.T.E.L.*, 983 A.2d 745, 747 (Pa.Super. 2009). Here, Mother filed her Rule 1925(b) statement 19 days after filing the notice of appeal.

3. Did the trial court commit an error of law in failing to consider the fact that [Father] was not involved in [Child's] life during the early portion of [Child's] life?

4. Did the trial court commit an error of law in failing to consider the abuse of [Father] towards one of [Half-Siblings]?

5. Did the trial court commit an error of law in failing to take into consideration the safety of [Child] while relocating to Texas?

6. Did the trial court commit an error of law and abuse of discretion in determining that it would be in the best interest of [Child] to move to Texas with [Father] to be closer to [Father's] family when the testimony indicated that [Father's] family[,] while centralized in Texas[,] had not lived there in the last 18 months?

Mother's brief at 4.

Intervenor, H.R., has filed a brief raising the issues that Father has not met his burden as to relocation and the trial court failed to properly weigh the factors enumerated in 23 Pa.C.S.A. § 5337.

Initially, we observe that, as the custody relocation hearing in this matter was held on July 15, 2015, the Act, 23 Pa.C.S.A. §§ 5321-5340, is applicable. *C.R.F. v. S.E.F.*, 45 A.3d 441, 445 (Pa.Super 2012) (holding that, if the custody evidentiary proceeding commences on or after the effective date of the Act, *i.e.*, January 24, 2011, the provisions of the Act apply).

In custody cases, our scope and standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Id.* at 443 (citation omitted).

We have stated:

> [t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa.Super. 2006) (citation omitted).

Further, with any custody case decided under the Act, the paramount concern is the best interests of the child. *See* 23 Pa.C.S.A. §§ 5328, 5338. "This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual

well-being of the child." ***M.J.M. v. M.L.G.***, 63 A.3d 331, 334 (Pa.Super. 2013) (citation omitted).

A modification of an existing custody may take place if relocation is at issue.

> If a counter-affidavit regarding relocation is filed with the court which indicates the nonrelocating party objects either to the proposed relocation or to the modification of the custody order consistent with the proposal for revised custody schedule, the court shall modify the existing custody order only after holding a hearing to establish the terms and conditions of the order pursuant to the relocation indicating the rights, if any, of the nonrelocating parties.

23 Pa.C.S.A. § 5337(f).

Following the hearing, if relocation is permitted, the court shall modify any existing custody order or set forth terms and conditions of any new order. 23 Pa.C.S.A. § 5337(g).

Section 5337(h) of the Act, 23 Pa.C.S.A. § 5337(h), sets forth the ten relocation factors that a trial court must consider when ruling on a relocation petition:

> **(h) Relocation factors.--**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:
>
> (1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and

other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

> > (8) The reasons and motivation of each party for seeking or opposing the relocation.
> >
> > (9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.
> >
> > (10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h). Additionally, "as the party proposing relocation, [Father] bears the burden of proving relocation will serve [Child's] best interests." ***S.J.S. v. M.J.S.***, 76 A.3d 541, 551 (Pa.Super. 2013), citing 23 Pa.C.S.A. 5337(i).

In her brief on appeal, Mother argues that the trial court abused its discretion in finding that Father satisfied his burden of proof that Child's relocation from Reading to Sweeny would serve Child's best interest under § 5337(h). As to § 5337(h)(1), Mother contends that the trial court failed to accord sufficient weight to the bond between Child and Half-Siblings and to the detrimental impact that severing said bond will have on Child, which, Mother asserts, would be the unavoidable consequence of Child's relocation. (Mother's brief at 13-14.) Regarding § 5337(h)(7), Mother disputes the trial court's apparent supposition that Father's reuniting with his family in Texas will enhance Child's general quality of life. Rather, she suggests that Paternal Grandfather's testimony that he works nationwide as an electrician

and has not been back to Texas in the last 18 months is indicative of what little family support there will be available for Father and Child in Sweeny. (*Id.* at 14.)  Finally, with respect to § 5337(h)(9), Mother alleges that Father bit M.G.'s face in a fit of rage and argues that the trial court did not give adequate consideration to the continuing risk of harm which Father presents to Child.  (*Id.* at 15.)  We disagree.[3]

Here, the trial court found the following with regard to the relocation factors:

> **"(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life."**
>
> This weighs in favor of Father.  He has had primary custody of [Child] for the last two years and has been the caring and nurturing parent.  Prior to that time, he traveled almost two hours each way every other weekend, regularly and faithfully, to exercise his custody rights.  When Father is not working he is with [Child] all the time.  His bond with [Child] is seemingly strong.  Mother has had minimal involvement for the last two years.  It is hard to say how strong the bond is since for the last two years she has seen [Child] on some weekends.  [Maternal Grandmother] has been very involved with [Child]

---

[3] We note that Mother did not challenge the lack of a discussion of the 16 custody/best interests factors under § 5328(a) in the trial court's opinion. She has, therefore, waived that challenge. *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa.Super. 2006) (holding that an appellant waives issues that are not raised in both his or her concise statement of errors complained of on appeal and the statement of questions involved in his or her brief on appeal).  We additionally note that Father has had primary custody of Child since September 2013.  He retains primary custody in his relocation to Texas.

over the years, as a helper and surrogate for Mother and as a grandmother. During the last two years, she has been with [Child] every other weekend, some holidays, and time in the summer. [Child] has a bond with and has been in regular contact with [Half-Siblings]. They appear to get along well. [M.G.] is three grades (fifth grade) ahead of him and [M.C.] is two grades (kindergarten) behind him. During the last two (2) years, their contact with [Child] has been only during Mother's custody periods of every other weekend, etc.

**"(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child."**

[Child] is seven years old and entering second grade. Father clearly is the proper party to have primary physical custody. Father's family is in Texas. That family appears to be solid, well[-]educated, hardworking, and family[-]oriented. If Father stays in Reading, he likely will not have the opportunities and support systems that he will clearly have in Texas. Those support systems will be there for [Child] as well. At his age, [Child] needs stability and support from many people. That stability is simply not available in Berwick with Mother and [Maternal Grandmother].

**"(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties."**

Mother has had very irregular contact with [Child] for two years. She sees him in conjunction with [Maternal Grandmother's] custodial periods. She texts [Child] and has regular phone contact, as does [Maternal Grandmother]. Relocation will not affect Mother's relationship with [Child] with an appropriate schedule. [Maternal Grandmother's]

relationship is secondary to Father's rights and relationship.

> Presumption in cases concerning primary physical custody.
>
> (a)  Between parents.—In any action regarding the custody of the child between the parents of the child, there shall be no presumption that custody should be awarded to a particular parent.
>
> (b)  Between a parent and third party.—In any action regarding the custody of the child between a parent of the child and a nonparent, there shall be a presumption that custody shall be awarded to the parent. The presumption in favor of the parent may be rebutted by clear and convincing evidence.
>
> (c)  Between third parties.—In any action regarding the custody of the child between a nonparent and another nonparent, there shall be no presumption that custody should be awarded to a particular party.

23 Pa.C.S.[A]. § 5327.

Although it is acknowledged that she may have rights of partial custody, we must recognize the parent's rights to raise the child. Presently, [Maternal Grandmother] (and Mother to a lesser degree) see [Child] every other weekend, some holidays, and four weeks in the summer. The master was inclined to reduce this time. [The trial court] agrees. A schedule including most of the summer, Christmas vacation, spring break if possible, and fact time twice each week and phone

calls regularly will maintain consistent and frequent contact allowing for continuing the relationship [Child] has with [Maternal Grandmother] and Mother, which is limited. The distance and cost is of some concern. However, [the trial court] would envision cost being minimized by meeting halfway driving for summer exchanges and the same or a plane at Christmas and in the spring. Mother and [Maternal Grandmother] can afford to help with costs with a part-time job. Father should be able to earn more, particularly if he moves.

**"(4) The child's preference, taking into consideration the age and maturity of the child."**

[Child] is too young to express a reasoned preference.

**"(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party."**

None of the parties exhibit a significant pattern of conduct promoting or thwarting the relationship of the parties with [Child]. However, Father has been relatively cooperative. He has been regular with his partial custody and, now, full custody. It does not appear that he wants to thwart the relationship of [Child] with [Mother] and/or [Maternal Grandmother]. Mother does not appear to want to thwart the relationship of [Child] with Father. [Maternal Grandmother] has been cool toward Father and does not promote [Child's] relationship with Father. However, [Maternal Grandmother] has just become less encouraging of the relationship of Father with [Child], although this may be because of this scheduled hearing and Father's intent to relocate.

**"(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to,**

**financial or emotional benefit or educational opportunity."**

The relocation will indeed enhance Father's quality of life. He will be home with a strong, hardworking extended family. He will have at least the same job opportunity and likely better opportunities. He may be able to transfer within his own company to Texas and/or secure a better paying job. He will have family to help day-to-day with [Child]. It is extraordinarily understandable why he desires to move back to his family and his roots.

**"(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity."**

This is the most important point. Father is intending to take this opportunity to move back to his [hometown] where he has family support. Importantly, that support will be there for [Child] also. The [trial court] saw the [Paternal Grandfather] testify. He is a hardworking solid man. He has led a hard life providing for himself and his family. He has a large house with plenty of room for [Child]. The school is nearby. He has nieces and nephews of a similar age nearby. Father is clearly the parent who can raise [Child] now. The relocation clearly enhances Father's chance for a better life, and thus, affords more opportunities for [Child]. Father has [Child] enrolled in Cub Scouts and a YMCA camp in Pennsylvania. Those opportunities or similar one[s] will exist in Texas, although within the warmth of an extended family.

**"(8) The reasons and motivation of each party for seeking or opposing the relocation."**

Father is moving to his hometown to be near his family. He has no family in Pennsylvania, besides [Child]. He is not moving to spite Mother or [Maternal Grandmother]. That is clear. Mother and [Maternal Grandmother] are opposing relocation

because they love [Child] and want to see him every other weekend during the school year. Once again, [the trial court] concurs with the master that [Maternal Grandmother's] custody schedule should be reduced in deference to Father['s] preferred right and obligation to be the nurturing party. Mother has not credibly reasserted her rights. She intends to see [Child] more frequently in the future or to get custody. But her plans are ephemeral and wishful.

**"(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party."**

This was a murky area in the testimony. Mother alleged abuse of her and [M.G.] over five years ago. There was no documentary evidence. These facts were not a factor prohibiting custody or limiting custody at the hearing in September 2013, or at the hearing of February 2015. These allegations were not raised before the master either time. Mother and [Maternal Grandmother] are still not saying that Father's custody should be limited or supervised because of alleged past abuse. These is no evidence of a continued risk of harm to [Child].

**"(10) Any other factor affecting the best interest of the child."**

[The trial court] has heard from the family that [Child] would be living with in Texas, i.e., Father and [Paternal Grandfather]. The [trial court] does not know the people he would be around in Berwick, except for [Half-Siblings]. Although there is strong consideration given to keeping siblings together, or in this case half-siblings, this factor is one of many. Moreover, he is now with [Half-Siblings] every other weekend, not all the time. With this relocation order, he will be with [Half-Siblings] more in the summer and more at Christmas. He will be having face time online with them weekly. In addition, although [Half-Siblings] are of a similar age, [Child]

also has cousins in Texas of a similar age with whom he can bond.

Trial court opinion, 8/21/15 at 9-16.

After a careful review of the certified record, the trial court's opinion, the briefs on appeal, and the relevant law, we conclude that the trial court's findings are supported by clear and convincing, competent, and sufficient evidence. As such, we discern no abuse of discretion or error of law in its reasoning or decision, and find that it was appropriate for the trial court to determine that Father met his burden of proving that Child's relocation from Reading, Pennsylvania, to Sweeny, Texas, would serve Child's best interest under 23 Pa.C.S.A. § 5337(h).

Accordingly, for the reasons state above, we affirm the trial court's order, granting Father the right to relocate Child from Reading, Pennsylvania, to Sweeny, Texas, pursuant to 23 Pa.C.S.A. § 5337(h).

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/16/2016