J-A08033-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| B.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| D.M.S. | : | |
| | : | |
| Appellant | : | No. 1340 WDA 2018 |

Appeal from the Order Dated August 21, 2018
In the Court of Common Pleas of Fayette County Civil Division at No(s):
1169 of 2016, G.D.

BEFORE: PANELLA, P.J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    FILED JUNE 11, 2019

D.M.S. ("Mother") appeals from the custody order entered granting primary custody of E.M.S. ("Child") to B.A.S. ("Father"). Mother claims the court erred in failing to conduct a relocation hearing, in failing to compare the school districts, and because the court "substantially based" its custody decision on a determination that Child needed a father figure. We affirm.

Child (born May 2008) is the child of Mother and Father. Mother and Father separated in the fall of 2015. Shortly after separation, Father moved from Pennsylvania to Minnesota. He continues to reside in Minnesota, and lives with his girlfriend, A.M.

In June 2016, Father filed a Complaint for Partial Physical and Shared Legal Custody of Minor Child. In August 2016, the court entered a Consent Custody Order, in which Mother had primary custody of Child. In June 2017, Father filed a Petition for Special Relief alleging Mother was in a relationship

with V.A. and that V.A. abused Mother and used drugs. Father requested that the trial court allow Child to remain in his custody. The court issued a temporary order granting custody to Father until a full hearing could be conducted. Mother filed a Petition for Return of Custody.

On August 22, 2017, the court held a hearing to determine whether Child should return to Mother. Following the hearing, the court denied the Petition for Return of Custody.

In November 2017, Mother filed a Request for Child Custody Mediation Conference and a Petition to Modify Custody. On December 29, 2017, the court entered a Temporary Modified Custody Consent Order. The court held a hearing on Mother's Petition to Modify on July 6, 2018. Following the hearing, the court granted primary custody during the school year to Father.

The trial court considered the custody factors set forth in 23 Pa.C.S.A. § 5328(a). It first addressed which party is more likely to encourage and permit frequent and continuing contact between Child and the other party. Trial Court Opinion, filed Aug. 21, 2018, at 1. It noted Mother testified that Father refused to allow Child's maternal grandparents to have unsupervised contact with Child and that Mother allowed contact between Father and Child. Id. It also noted the testimony of J.S., Child's adult brother, who stated it is difficult for him to communicate with Child when Child resides with Father. Id. at 1-2. The court noted that Father disputed the testimony. Id. at 1. It further noted that due to the distance between the residences, frequent contact with the non-custodial parent will not be possible. Id. at 2.

The court next addressed the present and past abuse by a party or a member of a party's household and whether there is a continued risk of harm. Id. The court noted that V.A. was charged with simple assault and harassment following an incident of domestic violence against Mother and that Mother testified V.A. is no longer a part of her life and there is no chance of continued contact. Id. The court noted, however, that Mother drove his truck while he was incarcerated and maintained contact with V.A.'s mother. Id. It concluded "[t]he uncertainty surrounding that status is a factor still favoring Father." Id.

The court next considered the parental duties performed by each party, noting each engaged in similar parental duties when Child was in their custody, and both are capable of performing all parental duties. The court also noted "Father's home includes a positive female role model, while Mother's home currently does not include a positive male role model." Id.

The court then considered the need for stability and continuity in Child's education, family life and community life. It stated Child was well-adjusted to life in both Minnesota and Pennsylvania. It noted "Father testified that [Child] was not up to the standards of the White Bear Lake School District when she entered school last year but recovered quickly and received high grades." Id. The court noted that Child participates in gymnastics and softball and has friends in Minnesota and that Mother testified she was looking to enroll Child in softball and gymnastics in Pennsylvania.

The court also considered the availability of extended family. It noted the presence of maternal grandparents and Child's two adult brothers in

Pennsylvania, but concluded this factor favored Father because A.M. had a large extended family in Minnesota, with whom Child spends time.

The trial court considered Child's sibling relationships, noting she has two adult brothers who live in Pennsylvania. Child is close with her siblings, and attends outings with her siblings when she is in Pennsylvania, but the court found that "the wide age gap . . . and the fact that they live in their own home suggests this factor is a small positive for Mother." Id. at 3-4.

The court noted Child had no preference, id., and that there was no evidence either parent attempted to turn Child against the other parent, id.

The court next found that both parties were "equally suited to provide a loving and nurturing relationship, adequate for [C]hild's emotional needs." Id. It found Father was "better equipped to provide a stable and consistent life for [Child]," noting that he had a steady employment schedule and that A.M. worked from home and had paid off the home in which they reside. Id. The court noted Mother had just started a new job and lived in a home owned by a friend. The court again noted that "Father's home included both a good male role model as well as a good female role model." Id.

The court found both parties "equally equipped and willing to attend to the daily needs of [Child]." Id.

The court next addressed the proximity of the parties' residences, noting the parties lived 914 miles apart. Id. at 5. The court found this factor forced it to choose a primary custodian for Child for the school year. Id.

The court found the factor which considered the parties' availability to care for Child or to make appropriate child-care arrangements favored Father because of the "constant availability of [A.M.]," who worked from home. Id. at 5.

The trial court next addressed the level of conflict between the parties and the parties' willingness and ability to cooperate with each other. It found that "[a]lthough all parties were cordial during the hearing, it [was] apparent that the parties are not fond of each other." Id. at 6. It noted the parties' relationship was "highly conflictual in the recent past." Id. However, it also found that "each party loves their daughter enough to put their differences aside and comply with this Court's order." Id.

As to the factor considering the history of drug or alcohol abuse, the court noted that Mother had been involved with V.A., who had a criminal past and a history of substance abuse, but that Mother testified she ended the relationship. It further noted that there was testimony that "Father hung up on Mother during a phone conversation when he seemed 'spaced out.'" Id. It found there was no evidence either party would endanger Child's welfare through substance abuse. Id.

The court found that the parties were in relatively good physical health and there was no evidence of any serious mental health issues.

The court also considered the following when addressing "any other relevant factor." Mother had a large fenced-in yard for Child to play in and owned a cat and a dog. Mother has lived in her current home since June 2017

and she started working at her current employment in July 2018. Father and A.M. had good stable employment. The court noted Child had the previous school year to get acclimated to the community in Minnesota and that A.M. "will be able to continue to provide [Child] with a positive female role model for whatever periods of time [Child] is away from her natural mother." Id. at 7.

The trial court stated it did not believe this was a relocation case because Father moved to Minnesota prior to initiating the custody action and only sought primary custody after a domestic violence incident in Mother's household. It found that Father's "motive in moving himself to Minnesota were not in bad faith, and were not intended to obtain an unfair advantage in custodial proceedings." Id. at 7. It also noted that "[n]either party urges consideration of any other factors." Id.

Mother filed a timely notice of appeal. She raises the following issues:

> I. Whether the trial court abused its discretion and committed a clear error of law when it permitted the child to be relocated to Minnesota when no relocation hearing was held that directly addressed the issue of the best interest of the child and the rights of [Mother].
>
> II. Whether the trial court abused its discretion and committed a clear error of law when it failed to conduct any analysis of the school district of the state to which the child was removed and compare the same to the school district from which the child was removed from in Pennsylvania.
>
> III. Whether the trial court abused its discretion and committed a clear error of law when it substantially based its decision on custody by indicating that the child needed a father figure.

Mother's Br. at 9 (suggested answers omitted). In her three issues, Mother claims the trial court abused its discretion in concluding that it would be in Child's best interest if Father had primary physical custody.

"In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion." V.B. v. J.E.B., 55 A.3d 1193, 1197 (Pa.Super. 2012) (quoting C.R.F. v. S.E.F., 45 A.3d 441, 443 (Pa.Super. 2012)). This Court "must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations." Id. (quoting C.R.F., 45 A.3d at 443). We defer to the credibility determinations of the presiding trial judge, "who viewed and assessed the witnesses first-hand." Id. (quoting C.R.F., 45 A.3d at 443). This Courts, however, is "not bound by the trial court's deductions or inferences from its factual findings[,]" and "[u]ltimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record." Id. (quoting C.R.F., 45 A.3d at 443). We may reject the trial court's conclusions "only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." Id. (quoting C.R.F., 45 A.3d at 443).

"When a trial court orders a form of custody, the best interest of the child is paramount." S.W.D. v. S.A.R., 96 A.3d 396, 400 (Pa.Super. 2014). The factors that a trial court must consider when awarding custody are set forth at 23 Pa.C.S.A. § 5328(a), which provides:

(a) Factors.--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Mother first argues that Father failed to present sufficient evidence to support the relocation of Child from Pennsylvania to Minnesota. She claims the court failed to analyze the relocation factors.

The Child Custody Act provides that when a custodial party seeks to relocate a child's residence, the party must petition the court, and the court must consider the relocation factors of Section 5337(h). 23 Pa.C.S.A. § 5337(h). If the proposed relocation will result in a change in custody, the court must also consider the custody factors in Section 5328(a). See A.V. v. S.T., 87 A.3d 818, 822–23 (Pa.Super. 2014). Section 5337(h) provides that a court should apply the following factors to determine whether relocation would be in a child's best interest:

(h) Relocation factors.--In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

- 9 -

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h).

Because the requested change would result in a relocation of Child, the court was required to consider the relocation factors set forth in Section 5337(h). D.K. v. S.P.K., 102 A.3d 467, 476-77 (Pa.Super. 2014). As this Court has previously found, "[s]everal of the factors of section 5337(h) are encompassed, either directly or implicitly, by the custody factors of section 5328(a)." Id. Further, a court should avoid "dissociating the issue of primary custody from the issue of relocation," and should instead decide the two issues together "under a single umbrella of best interests of the children." S.J.S. v. M.J.S., 76 A.3d 541, 550 (Pa.Super. 2013) (quoting Collins v. Collins, 897 A.2d 466, 473 (Pa.Super. 2006)).

In D.K., we noted there were three relocation factors that were not "necessarily part" of a trial court's analysis under Section 5328(a): "The age, developmental stage, needs of the child, and the likely impact the child's change of residence will have on the child's physical, educational and emotional development," 23 Pa.C.S.A. § 5337(h)(2); the "feasibility of preserving the relationship between the other parent and the child," id. at § 5337(h)(3); and "whether the change in the child's residence will enhance the quality of life for the child," id. at § 5337(h)(7); see D.K., 102 A.3d at 77.

Here, the trial court considered the custody factors set forth in Section 5328(a), and, in doing so, considered the relocation factors. See Trial Ct. Op. at 1-7. Specifically, the trial court found Child was well-adjusted to life both in Pennsylvania and Minnesota, that Child had the previous year to adjust to life in the Minnesota community, and that frequent contact with the non-

custodial parent would be difficult. Further, the trial court found that Father's motivation in moving to Minnesota was not in bad faith and "not intended to obtain an unfair advantage in custodial proceedings." Trial Ct. Op. at 7. The court found his move was motivated by "proper factors involving his financial well-being, as well as family and personal relationships." Id.

Accordingly, we conclude the trial court considered all relevant factors and Mother's first claim lacks merit.

Mother next claims the court erred because it failed to conduct an analysis of the school districts of the respective homes.

The custody factors do not explicitly require an analysis of the school districts in which each parent resides. However, the school district is relevant to custodial and relocation factors such as the need for stability and continuity in a child's education, the impact relocation will have on a child's educational development, and whether relocation will enhance educational opportunities. 23 Pa.C.S.A. §§ 5328(a)(4), 5337(h)(2), (7). Here, the trial court considered the testimony that Child was behind her classmates when she first started school in Minnesota, but quickly caught up. It does not appear that the parties presented any additional information as to either the Minnesota school district or the Pennsylvania school district, and Mother did not argue at the custody hearing that the Minnesota school did not afford Child a quality education. The trial court therefore considered the evidence as to the school districts that the parties presented, and Mother's claim lacks merit.

In her final issue, Mother claims the trial court relied too heavily on the fact that Child would not have a "father figure" at Mother's home.

No custody factor requires a consideration as to whether the household has a male and female role model and modifying custody due to the lack of a male or female role model would not be proper. Single parents, whether male or female, as well as same-sex couples, can provide a household that would meet a child's best interest.

Here, the trial court mentioned numerous times that Father's home had a male and female role model. However, we decline to conclude the trial court abused its discretion based solely on these statements. The trial court must consider the individuals living in each household when making a custody determination and therefore the court did not err in considering A.M. and her contributions to the household. See, e.g., 23 Pa.C.S.A. § 5328(a)(2), (12), (14). Further, the trial court considered all evidence presented and the relevant factors when making its determination, and, contrary to Mother's contention, the mentions of a male and female role model were not a "substantial basis" for the decision.

Accordingly, we conclude that Mother's claims lack merit.

Order affirmed.

President Judge Panella joins the Memorandum.

Judge Stabile joins the Memorandum and files a Concurring Statement.

- 13 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/11/2019</u>