J-A01049-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOSHUA MANNING | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| AMANDA ELEDGE | : | |
| | : | |
| Appellee | : | No. 1224 MDA 2021 |

Appeal from the Order Entered August 19, 2021
In the Court of Common Pleas of Perry County
Civil Division at No(s): FC-2019-00228

BEFORE: LAZARUS, J., NICHOLS, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED: FEBRUARY 11, 2022**

Appellant, Joshua Manning ("Father"), appeals from the order entered in the Perry County Court of Common Pleas, granting the request of Appellee, Amanda Eledge ("Mother"), to relocate with the parties' minor child, J.T.M. ("Child"). We affirm.

The relevant facts and procedural history of this appeal are as follows. Child was born in 2013. The parties lived together with Child for approximately one year after Child's birth, but the relationship deteriorated, and the parties separated. Thereafter, Child resided with Mother, Mother's fiancé ("Fiancé"), and Mother and Fiancé's infant son, who was born in 2020.[1]

_____

[1] At the time of the relocation hearing, Mother was pregnant with a second child from Fiancé. (**See** N.T. Hearing, 8/13/21, at 5). The delivery date was scheduled for November 2021. (**Id.**)

The family resided at a home they rented in Duncannon, Perry County.

Beginning in 2015, the court entered multiple custody orders providing Mother with primary physical custody. The court entered the most recent custody order on March 20, 2020. This order provided Father with specific periods of supervised and unsupervised visitation.[2]

On June 16, 2021, Mother submitted a notice of proposed relocation to South Carolina. Regarding the reasons for the proposed relocation, Mother explained:

> Mother and [Fiancé] have been offered an opportunity to purchase maternal grandparents' home in Little River, South Carolina. Said home will be larger for the growing family, in substantially better condition, and significantly cheaper than their current residence. [Fiancé] has secured multiple job offers in Little River, which will result in higher, more steady income than he earns at his current seasonal job.

(Notice of Proposed Relocation, dated 6/16/21, at ¶7).

Father filed a counter-affidavit on July 2, 2021, objecting to relocation or modification of custody. The court conducted a full evidentiary hearing on August 13, 2021, receiving testimony from Mother, Fiancé, and Father. The court also conducted an *in camera* interview with Child and the guardian *ad*

---

[2] Although custody was governed by the March 2020 order, the parties mutually agreed not to follow the order so that Father could have more custodial time with Child. (*See* N.T. Hearing at 8-9, 78). Beginning in April 2020, Mother provided Father with custody of Child every other weekend. (*Id.* at 9, 78). Father exercised these periods of custody at his residence in Harrisburg, Dauphin County. (*Id.* at 77).

*litem*.[3]   At the conclusion of the hearing, the court made an on-the-record statement evaluating each of the statutory relocation factors set forth in 23 Pa.C.S.A. § 5337(h).

By order entered August 19, 2021, the court granted Mother's request to relocate.  The court also drafted a modified custody order.  Mother maintained primary physical custody.  Father received partial physical custody one weekend each month, from Friday evening until Sunday at noon.[4]  Father also obtained custody for six (6) weeks during Child's summer vacation, as well as certain holidays.  Father timely filed a notice of appeal on September 15, 2021.  The notice of appeal included a concise statement of errors complained of on appeal.

Father now raises three issues for our review:

> Whether the trial court abused its discretion and/or committed an error of law in considering all relevant factors of 23 Pa.C.S. § 5337(h) when it entered an order of court which allowed the minor child to relocate to another state.
>
> Whether the trial court abused its discretion and/or

---

[3] Prior to the filing of the notice of proposed relocation, Mother filed a petition for appointment of guardian *ad litem* on February 19, 2020.  Following a telephone conference with counsel, the court appointed the guardian *ad litem* on February 26, 2020.

[4] The court was "cognizant of the logistical problems in setting a specific time for custody on a Friday evening."  (Order, filed 8/19/21, at 2).  Nevertheless, Mother and Fiancé both expressed their willingness to escort Child from South Carolina to Pennsylvania on a monthly basis.  (**See** N.T. Hearing at 28, 74). Thus, the court also noted that if Mother and Fiancé "are traveling to central Pennsylvania to visit family, the child will certainly be made available to her father for partial custody."  (Order, filed 8/19/21, at 2).

committed an error of law in improperly calculating the financial benefit to the relocating party and subsequently relying heavily on the financial factor.

Whether [Mother] presented evidence sufficient to establish that the relocation was in the best interest of the minor child.

(Father's Brief at 5).

In reviewing a child custody order:

[O]ur scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*S.J.S. v. M.J.S.*, 76 A.3d 541, 547-48 (Pa.Super. 2013) (internal citation omitted).

Father's issues are related, and we address them together. Father complains that the court "changed the language" of Section 5337(h)(2), which requires the court to consider the age, developmental stage, and needs of the child, as well as the likely impact relocation will have on the child's development. (Father's Brief at 12). Specifically, Father emphasizes the court's comment that relocation "will not negatively impact" Child. (*Id.*)

- 4 -

(quoting N.T. Hearing at 149). Father insists that the court was "looking for 'negative impact,'" and Mother did not present any evidence on this point. (*Id.*)

Father also argues that the court misapplied the facts when it evaluated Section 5337(h)(6), which requires the court to consider whether relocation will enhance the general quality of life for the party seeking relocation. Father contends that the court incorrectly evaluated the hearing testimony in concluding that Fiancé would have more income working in South Carolina. According to Father's calculations, Mother and Fiancé would actually have less income if Fiancé accepted the job offer in South Carolina.

Aside from these two specific factors, Father asserts that the court "offers almost no indication of how all factors were determined." (*Id.* at 14). Father maintains that the court discussed additional factors, such as educational opportunities for Child, even though the parties did not present evidence on these topics. Father concludes that Mother failed to sustain her burden of demonstrating that relocation was in Child's best interests, and the trial court abused its discretion by permitting Mother to relocate. We disagree.

The Custody Act defines "relocation" as "[a] change in residence of the child which significantly impairs the ability of a nonrelocating party to exercise custodial rights." 23 Pa.C.S.A. § 5322(a). Section 5337 governs a court's consideration of a request for relocation as follows:

### § 5337. Relocation

**(a)** **Applicability.**—This section applies to any proposed relocation.

**(b)** **General rule.**—No relocation shall occur unless:

(1)  every individual who has custody rights to the child consents to the proposed relocation; or

(2)  the court approves the proposed relocation.

\* \* \*

**(h)** **Relocation factors.—**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1)  The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2)  The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3)  The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4)  The child's preference, taking into consideration the age and maturity of the child.

(5)  Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6)  Whether the relocation will enhance the

general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(a)–(b), (h). Moreover,

[T]he party proposing relocation…bears the burden of proving relocation will serve the children's best interests. *See* 23 Pa.C.S.A. § 5337(i). Each party, however, has the burden of establishing "the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation." 23 Pa.C.S.A. 5337(i)(2).

*S.J.S., supra* at 551. In all of these proceedings:

[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

***R.M.G., Jr. v. F.M.G.***, 986 A.2d 1234, 1237 (Pa.Super. 2009) (internal citations and quotation marks omitted).

Instantly, the trial court provided an on-the-record evaluation of the factors set forth in Section 5337(h). To start, the court gave a lengthy statement praising Child and the parenting skills of both parties. Based upon their interactions during the *in camera* interview, the court labeled Child as "amazing" and "extremely intelligent." (N.T. Hearing at 146). The court observed that Child "hears what adults are saying. She hears what they are saying. She has her own opinions, but she is a very intelligent child." (***Id.***) Our review of the *in camera* interview confirms that Child: 1) had no trouble interacting with the jurist and guardian *ad litem*; 2) demonstrated that she understood the difference between the truth and a lie; and 3) provided appropriate answers in response to all of the court's questions. (***See id.*** at 116-38).

The court's observations about Child's intellect and demeanor provide greater context for its subsequent analysis of the statutory factors. Regarding Section 5337(h)(2), the court explained:

> Age, developmental stage, needs of the child and likely impact the relocation will have on Child's physical, educational, and emotional development, taking into consideration any special needs of the child.
>
> The only special need this child is going to have, I wouldn't be surprised if she is [deemed] gifted at some point, to get some extra support and education. She doesn't need it for the lower end, she may need it for the upper end.

＊  ＊  ＊

> She's in a very good developmental stage. She's where she needs to be. I think the relocation will not negatively impact her educationally, emotionally, or physically. I didn't hear anything or see anything that would indicate to me it would have a negative impact on her.
>
> Will it have a positive impact on her? Probably. She's very excited about moving closer to the beach. I think that most people would be, but that's not really a factor I'm taking into consideration on that.

(**Id.** at 148-49).

Contrary to Father's argument, the court did not "change the language" of Section 5337(h)(2). The court's comments demonstrate that it considered Child's age, developmental stage, and needs, in addition to the impact that relocation would have on Child's development. Here, the court found Child to be intellectually advanced. To the extent that relocation would impact Child's development, the court concluded that any impact would not be negative. Because the record supports the court's findings related to this factor, we cannot say that the court abused its discretion by declining to weigh Section 5337(h)(2) in favor of Father. **See S.J.S., supra**; **R.M.G., Jr., supra**.

As for Section 5337(h)(6), Mother and Fiancé provided ample testimony regarding the financial benefits of relocation. At the time of the hearing, Mother was not employed, and Fiancé worked as a landscaper. (**See** N.T. Hearing at 6-7). Mother testified that the family's Pennsylvania residence was a "two bedroom, one bath house—full house in the middle of nowhere," which they rented. (**Id.** at 12). If the court permitted Mother to relocate, she had

the option to purchase her parents' home in South Carolina. Mother explained that her parents wanted to downsize, and their home contained four bedrooms and three bathrooms. Further, Mother and Fiancé had saved enough money to place a down payment on her parents' home, and they were pre-approved for a mortgage on the property.[5] (*Id.* at 14, 39).

Regarding his income, Fiancé testified that he currently earned "[r]oughly $25 an hour," working "Monday through Saturday, sun up to sun down." (*Id.* at 70). Fiancé also testified that he had received a job offer in South Carolina to work as a mechanic servicing lawncare equipment. (*Id.* at 73). In this new position, Fiancé would earn "$40 an hour" while working "Monday through Friday, normal 9:00 to 5:00," plus four hours on Saturdays for nine months of the year. (*Id.* at 71-72, 73). The new position offered "full benefits," which Fiancé did not have with his job in Pennsylvania. (*Id.* at 18). Additionally, Fiancé emphasized that the job in South Carolina would give him more time to care for Child. (*Id.* at 74).

In evaluating Section 5337(h)(6), the court focused on Fiancé's potential salary and the benefit of home ownership:

> If I look at just what we know, $40 per hour, 40 hour week results in—50 weeks a year, results at $80,000 income. A $25 an hour work week, and I did it at, I think, 50 hours over 50 weeks is $62,000. So there's a $22,000 difference. I don't think the [c]ourt can look past that.

---

[5] Mother testified that the rent payment in Pennsylvania was $975.00/month, but she anticipated a $600.00/month mortgage payment for the South Carolina property. (*See* N.T. Hearing at 39-40).

> The fact that they will have the opportunity to purchase their own home is also a benefit, because you start building up equity in a home. You're moving from a smaller residence into a larger residence that you will be owning. I understand the issue that you have not—you don't have those loan documents in hand yet, but your testimony, ma'am, was that you have been pre-approved through three lenders.
>
> So I think financially and emotionally there is a benefit to [Mother] to move, which flows to [Child].

(**Id.** at 151).

Although Father disputes the court's decision to calculate Fiancé's Pennsylvania income based on a fifty-hour work week, Father's argument presents a hyper-technical analysis of the facts of record. It is undisputed that Fiancé obtained an offer of employment for a position in South Carolina. The offer included a higher hourly wage than what Fiancé made at his job in Pennsylvania. The offer also presented Fiancé with the opportunity to work fewer hours while obtaining full benefits, all of which would work to Mother and Child's advantage. Again, because the record supports the court's finding that relocation would enhance the **general quality** of life for Mother and Child, we cannot say that the court abused its discretion by making a rough estimate of Fiancé's wages while evaluating Section 5337(h)(6). **See S.J.S., supra**; **R.M.G., Jr., supra**.

Our review of the record leaves us satisfied that the court permitted Mother to relocate only after conducting a careful and thorough examination of Child's best interests. **See R.M.G., Jr., supra**. Under these circumstances,

appellate interference is unwarranted.  *Id.*  Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/2022