J-S02003-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ERMA MCMILLAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| CHILDREN AND YOUTH SERVICES | : | |
| DELAWARE COUNTY | : | |
| | : | |
| Appellee | : | No. 1791 EDA 2021 |

Appeal from the Order Entered August 13, 2021
In the Court of Common Pleas of Delaware County
Civil Division at No(s): 2019-002356

BEFORE: OLSON, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY KING, J.:                    **FILED APRIL 27, 2022**

Appellant, Erma McMillan ("Grandmother"), appeals *pro se* from the order entered in the Delaware County Court of Common Pleas, granting full legal and physical custody of minor children, Je.M. and Jo.M. ("Children") to Delaware County Children and Youth Services ("CYS"). We affirm.

The relevant facts and procedural history of this case are as follows. Grandmother is the maternal grandparent of Children. After the death of Children's mother in 2014, Children were residing with Grandmother until 2018 when Children were adjudicated dependent and CYS was granted legal and physical custody. On March 18, 2019, Grandmother filed the instant complaint for custody against CYS requesting sole physical and legal custody of Children. The trial court directed Grandmother to amend the pleading to

add Je.M.'s father, Ramon Berry ("Father"),[1] as a party and Grandmother complied on March 2, 2020.

On March 1, 2021, the court conducted a pre-trial evidentiary hearing specifically to address the circumstances surrounding the dependency adjudication of Children in 2018. Deborah Plummer, a CYS intake supervisor, testified as follows. Children were referred to CYS in 2014 and 2016 regarding Children's living conditions at Grandmother's house. Specifically, concerns were raised over the presence of black mold and feces in the home, lack of electricity, and failure to enroll Je.M. in school. CYS filed petitions seeking to adjudicate Children as dependent in 2014 and 2016 but ultimately withdrew the petitions. In 2018, CYS received a third referral alleging that Je.M. had been sexually abused by Dwayne Brown, Grandmother's boyfriend who lived in Grandmother's residence. CYS attempted to do an assessment of the home to ensure the safety of Children but Grandmother was uncooperative. Mr. Brown was referred to Child Line Registry for sexual abuse of Je.M. and was indicated as a perpetrator after investigation.

Lakisha Smith, a CYS caseworker supervisor, testified that after Children were adjudicated dependent, they were placed in foster care. CYS has had continuous legal and physical custody of Children since they were adjudicated dependent. Children were initially placed in the same home but were

---

[1] Jo.M.'s father is unknown.

separated when Je.M. was hospitalized in November 2018. Je.M. was diagnosed with Post Traumatic Stress Disorder and Oppositional Defiance Disorder and was placed in a therapeutic home where he attends therapy and takes medication. Jo.M. was diagnosed with Post Traumatic Stress Disorder, depression, and impulsivity. Jo.M. has been living in the same foster home since June 2019 and is doing very well there. Children have virtual visits with one another due to the distance between their homes.

Ms. Smith further testified that Grandmother was not initially considered as an option for kinship placement because she was being investigated as a perpetrator by omission due to concerns that she was aware of Mr. Brown's abuse of Je.M. However, in 2019, CYS learned that Grandmother was not indicated for abuse or neglect and contacted Grandmother to inquire whether she would participate in the process to determine whether she could be a kinship resource for Children. Grandmother was uncooperative and refused to participate in a home study. Children have had no contact with Grandmother since they were adjudicated dependent. Ms. Smith reported that Grandmother has only reached out to CYS twice since Children have been in CYS custody.

On May 11, 2021, the court conducted a custody trial. The guardian *ad litem* ("GAL") testified that he met with Children on two occasions. According to the GAL, Je.M. remembered Grandmother and expressed a desire to live with Grandmother again. However, Je.M. was apprehensive of Mr. Brown and

described instances of physical abuse by Mr. Brown. Je.M. further indicated that he would not want to be present in the same house as Mr. Brown. The GAL testified that Jo.M. did not express a desire to live with Grandmother. The GAL noted that although Je.M. experienced some teasing from the other children at his foster home, both children were safe and secure in their current placement. The GAL testified that he attempted to set up a meeting with Grandmother but she did not respond to his inquiry. When asked by the GAL, Grandmother initially denied knowing Mr. Brown but later admitted to knowing him after evidence about their relationship was presented during a court hearing. Based on the uncertainty of Grandmother's current relationship with Mr. Brown and the unknown condition of Grandmother's house, the GAL opined that Grandmother should not be awarded custody of Children.

Patrick Pearson, a long-time family friend of Grandmother, testified that he has known Children since their birth. Mr. Pearson stated that Grandmother would never harm Children or allow anyone to harm them. Grandmother was previously in a relationship with Mr. Brown but they are no longer involved. Further, Mr. Brown no longer resides with Grandmother but lives in New Jersey. Upon cross examination, Mr. Pearson admitted that his belief about Mr. Brown's whereabouts was based on what he was told by Grandmother and Grandmother's son.

Father testified that while Children were staying with him for a visit in 2018, Jo.M. told Father's girlfriend that Mr. Brown touched Je.M.

inappropriately. Father informed Grandmother of his concerns but Grandmother did not believe him. Because of this, Father temporarily refused to return Children to Grandmother's custody and informed the Chester Police Department of his concerns. Father testified that he believes Mr. Brown sexually abused Je.M. Father also reported instances of domestic abuse and physical altercations between Grandmother and Mr. Brown which were witnessed by Children. Father stated that he did not have objections to Children being returned to Grandmother's custody. He testified that Grandmother did her best to care for Children but was unsure whether living with Grandmother was in Children's best interests.

Grandmother testified that Children resided with her and not with Father prior to their adjudication of dependency. In 2018, Father asked to see Children for a few days and refused to return them to Grandmother's custody. Grandmother stated that the only other individual currently living in her house is her son. Grandmother requested full custody of Children and represented that she is acting in the best interests of Children.

Je.M., who was eleven years old at the time of trial, testified that Mr. Brown would hurt him when he lived at Grandmother's house. Specifically, Je.M. recounted instances where Mr. Brown pushed him down the stairs and scratched his arm, leaving a scar. Further, Je.M. testified that Grandmother and Mr. Brown would often get into physical altercations. Je.M. described witnessing one altercation where Grandmother's son got involved, which

resulted in a violent fight between Grandmother's son and Mr. Brown. Je.M. stated that he has not spoken with Grandmother since he was adjudicated dependent but he would like to return to living with Grandmother. When asked about his current placement, Je.M. stated that he has had difficulties with the other boys at the house, specifically stating that two of the other boys showed him their private parts.

Jo.M., who was ten years old at the time of the trial, testified that he gets along with everyone at his current foster home but would like to see his brother more often. Jo.M. does not recall anything bad occurring when he lived at Grandmother's house.

After considering all the evidence, the court entered an order on August 13, 2021, which granted sole legal and physical custody of Children to CYS and supervised in-person visitation to Grandmother. On September 3, 2021, Grandmother timely filed a notice of appeal and contemporaneous concise statement of matters complained of on appeal per Pa.R.A.P. 1925(a)(2)(i).

Grandmother raises the following issues for our review:

> Whether the [trial court] ever possessed jurisdiction for adjudication of [Je.M.] and [Jo.M.], and was [Grandmother's] right to a prompt disposition compromised, where the custody action lingered for more than three years while the children laid dormant in custody, and whether [Grandmother] should have retained custody in light of the lack of jurisdiction and continued and unjustifiable delay?
>
> Whether the trial court committed reversible error where the court failed to grant [Grandmother's] application for termination of parental rights of the father of [Je.M.],

wherein, [Father] was deemed by the dependency court to be unfit, convicted of indecent assault and various other felonious crimes, drug dealer, drug addict, homeless, mentally unstable and failed to exercise any parental care towards his child since the time of the child's birth?

Whether the trial court committed reversible error where the court refused to allow [Grandmother] to present mitigating and exculpatory evidence that neither she, nor her former paramour abused [Je.M.], and upon the court learning that [Grandmother] did not abuse the children, should she have been granted custody?

Whether the trial court committed reversible error, and was it prejudicial to [Grandmother], where the court refused to allow [Grandmother] to object, contest or rebut issues within the scope of testimony and arguments offered up by [CYS] as follows: (1) whether [Grandmother] had the right to object to or rebut: testimony and evidence offered up by [Grandmother] of historical encounters and allegations in which CYS formerly had with [Grandmother], which were deemed unfounded; (2) whether [Grandmother] had the right to object and offer mitigating evidence to the contrary?

Whether the trial court committed reversible error, and was it prejudicial to [Grandmother], where the court refused to allow [Grandmother] to present evidence that the CYS Case Worker (supervisor) who initially handled the dependency action, which is interchangeably related to the within action, that this person who was responsible for investigation of abuse of the children and who placed the children into custody was arrested two or more times for being under the influence of crack cocaine and alcohol, and was subsequently convicted of the same, and terminated.

Whether the trial court committed reversible error where the court failed to consider evidence that [Je.M.] was being physically and sexually abused while under the custody and control of [CYS], and both, the court and [CYS], who are deemed mandatory reporters, failed to intervene or deter further harm from befalling the child, which would have resulted in a different verdict?

Whether the trial court committed reversible error where

the court persistently denied [Grandmother's] written requests and oral motions for visitation and communication of her two grandchildren who were adjudicated dependent, based upon the father's unfitness and, where the children have been in custody for three years without visitation from [Grandmother] and where [CYS] persistently refused to communicate with [Grandmother] altogether.

Whether the court committed reversible error where the court sequestered [Grandmother] into the Judge's chambers to accompany all other parties in order to interview and question [Je.M], and [Jo.M.] and failed to permit [Grandmother] to question the children, wherein, [Grandmother] acted in the capacity of an attorney of record and (*pro se* litigant). In addition, was it error where the court failed to appoint an attorney to represent the legal issues of the children, and was it erroneous not to furnish [Grandmother] with … information elicited from the children's testimony and interview?

Whether [Grandmother] was deprived of procedural due process and was entitled to proper notice and service of the guardian *ad litem* report, and ample opportunity to respond[?] In addition, was it prejudicial to [Grandmother] where the court persuaded the guardian *ad litem* to take on dual roles permitting the guardian *ad litem* to represent [CYS], by allowing the guardian *ad litem* to argue and supply opinions as to whether [CYS] should be withdrawn from the custody action, moreover, was it prejudicial to [Grandmother], where the court permitted the guardian *ad litem* to examine and cross examine [Grandmother's] witness contrary to the rules of the court?

Whether [Grandmother] had the right to be heard and contest to her application for objections to the guardian *ad litem's* report, and whether she had the right to address, confront and or otherwise object to any portions of the said report in general.

Whether the guardian *ad litem* exercised due diligence and all reasonable efforts to visit and communicate with the two children to determine their interest and the best interest of the children, wherein, the guardian *ad litem* visited and met the children on (only) two occasions, and whether two visits

is ample and adequate time to determine the children's best interests.

Whether the Court committed reversible error where the court failed to adequately address the mandatory "Sixteen Child Custody Factors" in determining an award of custody to [Grandmother] as delineated under law….

(Grandmother's Brief at 2-11) (re-ordered for purposes of disposition).

In reviewing a child custody order:

[O]ur scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*S.J.S. v. M.J.S.*, 76 A.3d 541, 547-48 (Pa.Super. 2013) (internal citation omitted).

In her first issue on appeal, Grandmother argues that the trial court "lacked jurisdiction" over this matter because the court failed to promptly schedule a trial as required by Pa.R.C.P. 1915.4.[2]

_____

[2] Pa.R.C.P. 1915.4 provides in relevant part:

*(Footnote Continued Next Page)*

Preliminarily, Grandmother fails to cite to any authority for her bald assertion that the failure to promptly schedule a custody trial deprives the court of subject matter jurisdiction. Likewise, our review of the record reveals that Grandmother failed to raise this issue before the trial court. Indeed, this Court has recently held that the failure to object to the timing and/or scheduling of a custody trial under Rule 1915.4 constitutes waiver on appeal, which belies Grandmother's jurisdictional argument. **See Nelson v. Kresge**, No. 1417 EDA 2021 (Pa.Super. Feb. 23, 2022) (unpublished memorandum). **See also** Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019 for persuasive value). Thus, Grandmother's failure to preserve her claim before the trial court and on appeal constitutes

_____

Depending upon the procedure in the judicial district, within 180 days of the filing of the complaint either the court shall automatically enter an order scheduling a trial before a judge or a party shall file a *praecipe*, motion or request for trial, except as otherwise provided in this subdivision. If it is not the practice of the court to automatically schedule trials and neither party files a *praecipe*, motion or request for trial within 180 days of filing of the pleading, the court shall, *sua sponte* or on motion of a party, dismiss the matter unless a party has been granted an extension for good cause shown, or the court finds that dismissal is not in the best interests of the child. The extension shall not exceed 60 days beyond the 180 day limit. A further reasonable extension may be granted by the court upon agreement of the parties or when the court finds, on the record, compelling circumstances for a further reasonable extension….

Pa.R.C.P. 1915.4(b).

- 10 -

waiver. **See Nelson, supra**. **See also Coulter v. Ramsden**, 94 A.3d 1080, 1089 (Pa.Super. 2014), *appeal denied*, 631 Pa. 719, 110 A.3d 998 (2014) (stating: "[O]nly claims properly presented in the [trial] court are preserved for appeal"); **In re Estate of Whitley**, 50 A.3d 203, 209 (Pa.Super. 2012), *appeal denied*, 620 Pa. 724, 69 A.3d 603 (2013) (reiterating: "This Court will not consider the merits of an argument which fails to cite relevant case or statutory authority"); Pa.R.A.P. 302(a) (stating: "Issues not raised in the [trial] court are waived and cannot be raised for the first time on appeal").

In her second issue on appeal, Grandmother contends that the court erred by failing to terminate Father's parental rights over Je.M. As the trial court noted, "[a]ny request by [Grandmother] made during the pendency of the custody matter concerning termination of parental rights would have been correctly dismissed as not appropriately pled as termination is not properly addressed in custody matters." (Trial Court Opinion, filed August 13, 2021, at 8). We agree with the trial court that any termination of parental rights proceeding that might concern Father would be outside the scope of the custody matter before the trial court in this case. As such, Grandmother's second issue on appeal is without merit.

In Grandmother's third, fourth, and fifth issues combined, Grandmother alleges that the court erred by failing to allow Grandmother to: 1) present "mitigating and exculpatory evidence" that neither Grandmother nor Mr. Brown abused Children; 2) object, contest or present evidence to contradict

- 11 -

CYS's account of Grandmother's past encounters with CYS; and 3) present evidence of the criminal history of an employee of CYS who handled Children's dependency matter.

Nevertheless, Grandmother's brief fails to have any meaningful discussion of the nature and type of evidence she attempted to introduce, when she attempted to introduce such evidence and why such evidence was admissible under the Pennsylvania Rules of Evidence. Because Grandmother's brief is deficient such that we cannot properly assess the merits of her claim, Grandmother has waived her third, fourth and fifth issues on appeal. ***See In re R.D.***, 44 A.3d 657 (Pa.Super. 2012), *appeal denied*, 618 Pa. 677, 56 A.3d 398 (2012) (holding appellant waived issue, where argument portion of appellant's brief lacked meaningful discussion of, or citation to, record and/or relevant legal authority regarding issue generally or specifically; appellant's lack of analysis precluded meaningful appellate review).

In her sixth issue on appeal, Grandmother argues that the court erred by failing to consider evidence that Je.M. was being physically and sexually abused while under the custody and control of CYS. Grandmother asserts that "[h]aving been made aware of such disturbing information … both the court and CYS failed to take precautionary measures to modify the custody aspects of the child's placement or simply award temporary custody to [Grandmother] until the time of trial." (Grandmother's Brief at 46).

Again, Grandmother's brief fails to cite to the record to indicate when

- 12 -

she introduced any evidence prior to trial that Je.M. was being physically and sexually abused in his CYS placement. *See In re R.D., supra*. Further, our review of the record shows that the only evidence before the court of any mistreatment of Je.M. at his current placement was Je.M.'s testimony at trial. Contrary to Grandmother's assertion, the court did not disregard this evidence but credited it in its findings of fact and conclusions of law and ordered that Je.M. be immediately removed from his current placement. (*See* Findings of Fact and Conclusions of Law, filed August 13, 2021, at 29; Final Custody Order, filed August 13, 2021, at 2). Accordingly, Grandmother's sixth issue on appeal merits no relief.

In her seventh issue on appeal, Grandmother argues that the court erred by failing to grant Grandmother's written and oral requests for visitation with Children during the pendency of this custody case. Once again, we note that Grandmother's brief fails to cite to the record to demonstrate when she made any such written or oral requests. *See In re R.D., supra*. Our review of the record shows that Grandmother did not file any motions or petitions requesting interim custody of Children pending trial. Further, Grandmother failed to cite to any relevant authority to demonstrate why the failure to grant any such requests for visitation would constitute an abuse of discretion. *See id. See also Whitley, supra*. As such, Grandmother has waived her seventh issue on appeal.

In her eighth issue on appeal, Grandmother argues that the court erred

by failing to allow Grandmother, who was a *pro se* litigant, to be present in the room when the court questioned Children.

Prior to questioning Children, the court clearly explained on the record the procedure it intended to follow. (***See*** N.T. Trial, 5/11/21, at 128-133). The court stated that it would allow each party to submit questions they wished to ask Children but would not allow them to ask questions themselves. All parties and counsel were instructed to wait in an adjoining room from which they could hear Children's testimony. Grandmother indicated that she wanted to ask questions to Children but did not object to the court's proposed procedure. As such, Grandmother has not preserved this issue for our review. ***See Coulter, supra***; Pa.R.A.P. 302(a).

In her ninth, tenth and eleventh issues combined, Grandmother argues that the court impermissibly allowed the GAL to argue, supply opinions, and cross-examine Grandmother's witnesses at trial. In addition, Grandmother asserts that she was deprived of procedural due process because she only received the GAL's report on the morning of trial even though she was entitled to be served with the GAL's report no later than 20 days prior to trial under 231 Pa. Code § 1915.11-2.[3] Grandmother contends that the court erred by refusing to hear argument on her objections to the GAL's report and admitting

---

[3] "The guardian *ad litem* shall file of record and provide copies of any reports prepared by the guardian *ad litem* to each party and the court not later than 20 days prior to trial." 231 Pa. Code § 1915.11-2(c).

it into evidence. Further, Grandmother argues that the GAL only met with Children two times and thus "it was an abuse of discretion for the trial court to adopt the GAL's report for the purpose of rendering it's final judgment." (Grandmother's Brief at 93).

Nevertheless, Grandmother failed to object at trial when the court allowed the GAL to cross examine her witnesses. As such, Grandmother has not preserved this issue for appellate review. *See Coulter, supra.*

Regarding Grandmother's assertion that the court did not allow her to object to the admissibility of the GAL's report, the court explained:

> The trial court allowed [Grandmother] to make objections to the admissibility of the [GAL] report at trial. Although most of the "objections" were fact based and argumentative, [Grandmother] did state that she did not have the opportunity to read the report at which time the trial court allowed [Grandmother] additional time to read the report. The trial court then overruled her objection and admitted the report. However, upon the filing of [Grandmother]'s objection to the admission of the [GAL] report the court reopened the record to determine whether the report should be admitted into evidence.
>
> At the hearing on the objection, the trial court determined that there was no denial of due process or prejudice to [Grandmother] in allowing the introduction of the [GAL]'s report at trial. The [GAL] provided the report to [Grandmother] as well as to counsel for CYS on the morning of the trial because as he explained on the record, he had been unable to finish his report within twenty days of the trial due to [Grandmother's failure] to cooperate with an interview and home study. The trial court determined that it was purely due to [Grandmother]'s stalling and refusal to cooperate with the [GAL] that prevented him from submitting his report twenty days prior to the trial and that such refusal hampered the ability of the [GAL] to timely provide his report. [Grandmother] should not now have the

benefit of objecting to the introduction of the report when she was the sole reason as to why it was not completed more than twenty days prior to trial.

Additionally, the trial court noted that [Grandmother] referenced the [GAL's] report in her direct examination of the [GAL] and asked a question of the [GAL] while quoting the report. Therefore, the trial court concluded that [Grandmother] not only had the opportunity to read it prior to trial but also to comprehend it well enough to use it as part of her trial strategy. Therefore, there was no error to allow the introduction of the [GAL's] report.

Finally, the [GAL] testified consistently with his report and the conclusions in his report were repeated in his direct and cross examination testimony. Therefore, there was no prejudice to [Grandmother] for the trial court to read the report which reiterated the [GAL]'s testimony.

(Trial Court Opinion at 10-11). The record supports the court's analysis. Consequently, we cannot say the court abused its discretion in overruling Grandmother's objection to the GAL's report. **See *S.J.S., supra***. Further, Grandmother's complaint that the GAL only interviewed Children on two occasions implicates the credibility of the GAL's findings. Determining credibility of evidence is strictly within the purview of the trial court and as such, we find no error in the court's reliance on the GAL's report in its determination. ***Id.*** Therefore, Grandmother is not entitled to relief on her ninth, tenth or eleventh issues on appeal.

In her final issue on appeal, Grandmother argues that the court erred by failing to adequately address the custody factors. Specifically, Grandmother notes that the trial court failed to address factors 10 and 12 in its findings of fact and conclusions of law. Further, Grandmother alleges the

following errors in the court's weighing of the remaining custody factors: 1) finding that factors 1 and 8 weighed in favor of CYS when Grandmother testified that she has not been able to see Children since they were adjudicated dependent because CYS refused to communicate with her; 2) finding that factor 2 weighed in favor of CYS when all past allegations that Grandmother was abusive were deemed unfounded; 3) finding that factors 3, 4 and 9 weighed in favor of CYS when Je.M. has been assaulted and sexually abused while under CYS custody; 4) finding that factor 6 weighed in favor of neither party when Children have been separated for almost four years while in CYS custody; and 5) finding that factor 7 favored both parties when both children testified that they would prefer to live with Grandmother. Grandmother concludes that the court abused its discretion in awarding CYS sole physical and legal custody of Children. We disagree.

The Child Custody Act provides:

**§ 5328.  Factors to consider when awarding custody**

**(a)    Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1)  Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2)  The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better

- 17 -

provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3)    The parental duties performed by each party on behalf of the child.

(4)    The need for stability and continuity in the child's education, family life and community life.

(5)    The availability of extended family.

(6)    The child's sibling relationships.

(7)    The well-reasoned preference of the child, based on the child's maturity and judgment.

(8)    The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9)    Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10)  Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11)  The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The  level  of  conflict  between  the

parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

"With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child." *M.J.M. v. M.L.G.*, 63 A.3d 331, 334 (Pa.Super. 2013), *appeal denied*, 620 Pa. 710, 68 A.3d 909 (2013) (quoting *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa.Super. 2011)). In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M., supra* at 336. A court's explanation of reasons for its decision, which adequately addresses the relevant custody factors, complies with [the statute]. *Id.*

Instantly, the court explained in its opinion that its failure to specifically address factors 10 and 12 in its findings of fact and conclusions of law was an

inadvertent oversight. The court intended to list these factors with its analysis of factor 9 but unintentionally omitted it. We note that the court issued an extensive 36-page opinion of its findings of fact and conclusions of law, covering all the evidence presented at trial and providing a detailed analysis of all the other custody factors. Notwithstanding its omission of expressly addressing factors 10 and 12, the court adequately covered the substance of those factors in its analysis of factors 3, 4 and 9 by discussing Children's current needs and the abilities of the parties to meet those needs. (*See* Findings of Fact and Conclusions of Law at 25-36). Our review of the court's findings and fact and conclusions of law *in toto* makes clear the court adequately analyzed and considered all custody factors delineated in Section 5328(a). *See M.J.M., supra*.

Specifically, the court found: 1) factors 1, 8, and 13 weighed in favor of CYS because CYS has been willing to permit contact between Grandmother and Children but Grandmother has been uncooperative; 2) factor 2 weighed in favor of CYS because Je.M. was physically and sexually abused by a member of Grandmother's household and it is unclear whether Grandmother is still in contact with him; 3) factors 3, 4, and 9 weighed in favor of CYS because Children's needs are being met by CYS and Grandmother has failed to establish that she can provide safe living conditions for Children; 4) factor 7 favored both parties because Je.M. stated that he would prefer to live with Grandmother but does not want to have contact with Mr. Brown and Jo.M. did

not express a clear preference between Grandmother and his current placement; and 5) the remaining factors favored neither party.

On appeal, Grandmother essentially asks this Court to reweigh the Section 5328(a) factors in her favor. We have carefully reviewed the record in this case and determined that the record supports the trial court's reasonable findings, and those findings were not the result of an error of law. *See S.J.S., supra*. Therefore, we accept the trial court's findings and decline to reweigh the evidence. Accordingly, Grandmother is not entitled to relief on any of her issues on appeal and we affirm the trial court's order.[4]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/27/2022

---

[4] On April 13, 2022, Grandmother filed three (3) applications for relief in this Court seeking to (1) complete the certified record with additional notes of testimony; (2) compel the GAL to file a brief; and (3) requesting oral argument. Nevertheless, the record contains all relevant transcripts necessary for our disposition of the appeal. Additionally, Grandmother cites no legal authority to support her claim that the GAL was required to file an appellate brief. Further, Grandmother was denied oral argument in this case based on the late filing of her appellate brief. For these reasons, we deny Grandmother's applications for relief.